Jaburg & Wilk, P.C.
3200 N. Central Avenue, 20th Floor
Phoenix, AZ 85012
602.248.1000

Kraig J. Marton (003816)
kjm@jaburgwilk.com
Jeffrey A. Silence (029143)
jxs@jaburgwilk.com

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Jeremy Thacker, | No. 2:18-cv-0063-DJH |
| Plaintiff, | **FIRST AMENDED COMPLAINT** |
| vs. | |
| GPS Insight, LLC; Robert Donat, individually; | (Title VII – Unlawful Retaliation;; Intentional Interference with Contract; Defamation; False Light Invasion of Privacy; Fair Credit Reporting Act Violations; Intrusion Upon Seclusion Invasion of Privacy;Interference with Prospective Business Relations) |
| Defendants. | |
| | (Assigned to the Honorable Diane J. Humetewa) |

Plaintiff Jeremy Thacker for his Complaint alleges as follows:

1. Plaintiff Jeremy Thacker ("Mr. Thacker") is a man filing individually who at all relevant times was domiciled in Maricopa County, Arizona.

2. Defendant GPS Insight, LLC ("GPSI") is an Arizona limited liability company with its principal place of business in Maricopa County, Arizona.

3. Defendant Robert J. Donat ("Mr. Donat") is an individual who has been the President, sole Director, and majority shareholder of GPSI's sole member,

Sedonatech, Inc., since approximately 2006. Mr. Donat also holds himself out as the founder and chief executive officer of GPSI.

4. This action arose out of conduct that occurred in Maricopa County, Arizona.

5. Venue and jurisdiction is proper in this Court.

6. GPSI employed Mr. Thacker in a sales position from approximately June 4, 2013 until the termination of his employment on March 6, 2017.

7. Throughout Mr. Thacker's employment, he provided exemplary service to GPSI, achieving numerous awards.

8. Starting in December 2015, Mr. Thacker received increasing levels of sales responsibility and opportunity, and he was promoted to the Government Sales team in January of 2016.

9. Mr. Thacker had not received any complaints or negative feedback of any kind from GPSI management during that time and had in fact received praise on numerous occasions from his supervisors regarding his attitude and performance.

10. Mr. Thacker rewarded that confidence in him by achieving exceptional sales results in 2016-2017, including contributing half of the sales for the direct sales team's top sales month in company history in February 2017, immediately preceding the termination of his employment.

11. Mr. Thacker's good standing with GPSI seemed to change in or shortly after December 2016, when he began a romantic relationship with another GPSI employee Kristin Lisson and began objecting to certain inappropriate conduct by Mr. Donat toward Ms. Lisson including express and implied quid pro quo statements, followed by sexual harassment and retaliation toward Ms. Lisson and Mr. Thacker when she made it clear that she was not interested in having a romantic relationship with Mr. Donat.

12. Before Mr. Thacker and Ms. Lisson began dating, they each conscientiously reported their intentions to their respective supervisors, Tyler Mortensen

20071-20071-00001\JXS\KMR\3135073.1

and Jason Walker, who assured them that the relationship did not violate any GPSI policies and did not involve a conflict of interest because Mr. Thacker and Ms. Lisson did not work in the same chain of command or have any management influence over each other's employment.

13. What none of those individuals could anticipate or account for was the irrational behavior of GPSI CEO Rob Donat, whose apparent obsession with Ms. Lisson and uncontrolled jealousy related to Mr. Thacker's relationship with her caused him to target Mr. Thacker for mistreatment from the moment he learned of Mr. Thacker's relationship with Ms. Lisson and from when Ms. Lisson rejected his repeated attempts to convince her to have a sexual relationship with him again.

14. Mr. Donat recently had engaged in an extramarital sexual relationship with Ms. Lisson—a relationship that Ms. Lisson ended in November 2016.

15. Throughout December 2016, Ms. Lisson asserted to Mr. Donat that she did not want to be in a relationship with him. In Ms. Lisson's conversation with Mr. Walker regarding her relationship with Mr. Thacker, she asked Mr. Walker if he thought she should let Mr. Donat know about it.

16. In response, Mr. Walker told Ms. Lisson that she should inform Mr. Donat of the relationship because Mr. Walker suspected that Mr. Donat had a "crush" on Ms. Lisson, given Mr. Walker's and Ms. Lisson's previous discussions about a liaison in which she and Mr. Donat had engaged in the past.

17. On January 10, 2017, Ms. Lisson told Mr. Donat about her new relationship with Mr. Thacker. Mr. Donat became very emotional and immediately began defaming Mr. Thacker in an effort to influence Ms. Lisson.

18. Among his defamatory comments, Mr. Donat claimed that Mr. Thacker "stole" money from GPS Insght because he had "$6k in unauthorized credit card charges." He further stated that Mr. Thacker had bought things for himself "ILLEGALY with the company credit card."

19. Mr. Donat further stated that Jeremy had a sexually transmitted disease (herpes).

20. Upon information and belief, Mr. Donat made other defamatory statements about Jeremy that he does not yet know about.

21. Mr. Donat continued to make his defamatory assertions when he called Ms. Lisson on January 16; however, Ms. Lisson kept up friendly responses after Mr. Donat suggested that shutting him out would kill him and that he was admittedly obsessed with her.

22. On January 17, Ms. Lisson sent Mr. Donat a letter, objecting to his interference in her personal relationships, his continued pursuit of a relationship with her, and undeservedly discrediting Mr. Thacker. Ms. Lisson ended her letter appealing to Mr. Donat to let her go.

23. Later that night, Mr. Donat responded to her letter with hostility stating he understood why Elliot Batcheller, GPSI's V.P. of Operations, had always called Ms. Lisson "a bitch."

24. Later that week, during a meeting in Mr. Donat's office to discuss subordinate bonuses, Mr. Donat initiated a more personal conversation with Ms. Lisson, telling her that he was struggling with the fact that he could not have the only thing he wanted, Ms. Lisson. In that conversation, Mr. Donat also alluded to his stress level being high and made comments about it affecting his health and overall well-being.

25. Subsequently, Mr. Donat again told Ms. Lisson that he wanted to continue his relationship with her after having recently confided in his ex-wife Kristi Donat regarding the affair because Ms. Donat would approve of Ms. Lisson as a romantic partner for Mr. Donat.

26. Mr. Donat also told Ms. Lisson that he confided in a professional acquaintance in his Vistage group, Kate Wells, about the affair and his struggle to overcome Ms. Lisson's rejection.

27. In February 2017, Mr. Donat slightly revised his approach. He attempted to drive Ms. Lisson away from Mr. Thacker by claiming that her association with Mr. Thacker was damaging her credibility and acceptance by others within the company and that her relationship with Mr. Thacker was not painting her in a good light.

28. Later the same day, Mr. Donat called Ms. Lisson and among other things told her she could not ask anyone, including her direct supervisor, Mr. Walker, about the issues he had raised. Mr. Donat also told Ms. Lisson that he heard that she was being "bitchy." Mr. Donat again brought up Ms. Lisson's relationship with Mr. Thacker being a cause for negative perception and threatened her that if she did not make appropriate corrections, it would be the "nail in the coffin" for a future relationship between her and Mr. Donat while acknowledging Ms. Lisson had already told him she did not want a relationship with Mr. Donat. Ms. Lisson ended the conversation because she started experiencing a panic attack and could not breathe.

29. The next day, after Ms. Lisson told Mr. Walker that she had received an upsetting message from Mr. Donat, Mr. Walker told Ms. Lisson he just wanted to be left out of it. Mr. Donat continued to text Ms. Lisson reiterating that he hoped she would fix her situation.

30. On February 16, Mr. Mortensen told Mr. Thacker that he needed to be in earlier because Mr. Donat was on the lookout for him, asking about his whereabouts frequently. In that same conversation, Mr. Thacker personally objected to Mr. Mortenson about Mr. Donat's continuing sexual harassment of Ms. Lisson.

31. On February 22, Mr. Walker had a one-on-one meeting with Ms. Lisson. In that meeting, Mr. Walker brought up to Ms. Lisson that Mr. Walker had intentionally delayed talking to Mr. Donat to get approval for Mr. Thacker's compensation for the Amerisure deal because Mr. Donat was upset with Mr. Thacker at that time.

32. Despite Ms. Lisson's repeated insistence that she did not want a romantic relationship with Mr. Donat, Mr. Donat again brought it up on March 1, 2017. He

- 5 -

1 texted Ms. Lisson stating that he couldn't sleep the night before, having been reminded
2 of an earlier night when he was "going insane" thinking about her and Mr. Thacker.

3       33.    Later that day, Mr. Donat called Ms. Lisson to discuss the matter at her
4 invitation. In the phone conversation, Ms. Lisson explained to Mr. Donat that she was
5 concerned that Mr. Thacker was being treated unfairly at work because of her
6 relationship with him. Mr. Donat reasserted that Mr. Thacker was ruining her reputation
7 with Ms. Lisson's supervisor, Mr. Walker.

8       34.    Ms. Lisson asked Mr. Donat to ensure that he would not unfairly scrutinize
9 Mr. Thacker going forward. In response, Mr. Donat told Ms. Lisson that as CEO, it
10 wasn't his job to personally investigate a sales rep's performance but that he had been
11 going to Mr. Thacker's office to check on him whenever Ms. Lisson is gone because he
12 is paranoid that they were gone somewhere together.

13       35.    On March 2, Mr. Donat's personal attacks on Mr. Thacker continued,
14 texting Ms. Lisson that Mr. Thacker is a "complete arrogant condescending and unkind
15 piece of shit" and "he treats people like shit if he doesn't have to be nice to them for his
16 own purposes."

17       36.    That same day, Mr. Thacker met with Mr. Mortenson and Mr. Walker to
18 discuss various employment issues. In that meeting, Mr. Walker confirmed that Mr.
19 Thacker's Amerisure deal he worked while on the commercial team had been placed on
20 holdover status when he moved to the government-related position. He also told Mr.
21 Thacker that they had been unable to calculate the value and determine his
22 compensation on the Amerisure deal until two weeks before that meeting and now
23 would have to get the payout approved by Mr. Donat.

24       37.    In that meeting, they also discussed alleged complaints that had been
25 received by Mr. Donat against Mr. Thacker and Mr. Donat's own complaints about Mr.
26 Thacker's performance. Ultimately, Mr. Walker acknowledged the "messy" situation
27 that Mr. Thacker was in with Mr. Donat, claiming that he did not know anything while
28 simultaneously indicating that he did not condone the workplace harassment that was

occurring and telling Mr. Thacker that he should be able to come to work and do his job without that.

38. Later that night at a work social event, Mr. Donat told Ms. Lisson that Mr. Thacker is a horrible person who does not have a soul and is the worst person on the planet. In a later message to Ms. Lisson referring to that same social event, Mr. Donat said he had been wanting to punch Mr. Thacker in the throat all night.

39. On March 6, Mr. Mortenson and Mr. Walker met with Mr. Thacker and terminated his employment. In that meeting, Mr. Mortenson and Mr. Walker took complete responsibility for the decision to terminate Mr. Thacker's employment, but it was apparent that Mr. Donat had a significant influence on the decision.  While Mr. Mortenson and Mr. Walker asserted that Mr. Thacker's relationship with Ms. Lisson was not a factor, they both admitted that Mr. Donat came to them with complaints against Mr. Thacker that ultimately led to the decision to terminate his employment.

40. In conjunction with the termination, Mr. Donat and GPSI offered Mr. Thacker severance compensation in exchange for confidentiality, a full release of his claims against them, and his agreement not to attend any Company sponsored or paid-for event unless he was the personal guest of a person that is a Vice President level or higher within the company.

41. Mr. Thacker rejected the severance offer and indicated his intention to pursue legal claims against Mr. Donat and GPSI.

42. By March 10, Mr. Donat acknowledged that Mr. Thacker and/or Ms. Lisson may have legal claims against him and/or GPSI.

43. Mr. Thacker received an email from Charles Morrow of Galbut & Galbut on March 8, 2017, which states, "Galbut & Galbut has been retained to represent GPS Insight in this matter." GPSI_0000053.

44. After Mr. Thacker's termination, Ms. Lisson disclosed her past affair between herself and Mr. Donat in an email addressed to Mr. Walker, Mr. Mortensen, Mr. Batcheller, Mr. Donat, and attorney Charles J. Morrow. Mr. Batcheller responded to

- 7 -

Ms. Lisson, "What started as my attempt to shelter Jeremy from Rob (not knowing how utterly impossible that was) and allow him to continue to be successful has cascaded into something I wish I didn't have to be a part of."

45. Since Mr. Thacker's termination—and Ms. Lisson's subsequent termination shortly thereafter—Mr. Donat has continued to defame Mr. Thacker to Ms. Lisson through a series of unreturned messages and e-mails and to Robert Dennis in emails dated August 4 and August 21, 2017.

46. Specifically, in the August 4 email to Robert Dennis, Mr. Donat falsely asserted that (a) Mr. Thacker bought toys illegally with the company credit card; (b) Mr. Thacker stopped working prior to his termination; and (c) Mr. Thacker stole.

47. In the August 21 email to Robert Dennis, Mr. Donat falsely stated that Mr. Thacker was the subject of an ongoing prosecution for felony theft.

48. Mr. Donat has even gone so far as to pull a background report on Mr. Thacker after he was no longer employed by GPSI and shared and/or misrepresented the information from the report to Mr. Thacker's former coworkers and social acquaintances. Mr. Donat falsely claimed that Mr. Thacker is a "felon."

49. Mr. Donat has continued to engage in retaliation by threatening to assert frivolous claims against Mr. Thacker if he followed through on his promise to file a lawsuit asserting his Title VII claims.

50. All of GPSI's adverse employment actions (and discriminatory and harassing behaviors) were motivated by Mr. Thacker's association with Ms. Lisson—the subject of Mr. Donat's sexual obsession and harassment—and/or by Ms. Lisson's and Mr. Thacker's objections and Ms. Lisson's refusal to be subjected to the ongoing sexual harassment and express an implied quid pro quo assertions from GPSI's President/CEO Mr. Donat.

51. The illegal discriminatory and retaliatory interference of Mr. Donat caused GPSI to engage in the material, adverse employment actions including: refusing to compensate Mr. Thacker for the Amerisure deal in the same manner that others have

been compensated under similar circumstances; giving Mr. Thacker a significantly smaller profit-sharing bonus than justified by his job performance; terminating Mr. Thacker's employment; and defaming Mr. Thacker.

52. Upon information and belief, Mr. Mortenson and Mr. Walker also acted with a retaliatory motive in engaging in the adverse employment actions against Mr. Thacker in that they took the adverse actions because Mr. Thacker had engaged in the protected activity and/or due to his association with Ms. Lisson who complained about unlawful harassment and quid pro quo behavior by Mr. Donat.

53. Whether or not Mr. Mortenson or Mr. Walker personally had the requisite illegal motive, they permitted Mr. Donat's illegally motivated allegations to ultimately determine their decision and therefore GPSI is liable for that illegally motivated conduct.

54. Specifically, immediately after Ms. Lisson told Mr. Donat that she was in a relationship with Mr. Thacker, Mr. Donat became emotional and began defaming Mr. Thacker. Only days later, GPSI notified Mr. Thacker of his profit-sharing bonus, awarding Mr. Thacker only a 7% increase over the previous year while far less productive and less tenured sales representatives received substantially greater increases.

55. The failure to compensate Mr. Thacker anything for the Amerisure deal that he sourced and worked was a direct result of the illegal discriminatory/retaliatory motivation.

56. When GPSI received the commitment from Amerisure in January 2016 at the same time Mr. Thacker was being shifted to the government-related position, Mr. Walker assured Mr. Thacker that the company would take care of him by compensating him for bringing in the client. The Amerisure deal would be treated as an exception/holdover so that Mr. Thacker could be compensated, just as the company had done with others in similar circumstances.

57. In the March 2, 2017 meeting, over a year later, Mr. Walker told Mr. Thacker that he had only been able to quantify the value of the deal a few weeks before

and that he would not be able to address it at that point because Mr. Donat needed to approve the final payment and Mr. Donat was mad at Mr. Thacker.

58. Based on the compensation paid under similar circumstances to David Pope, the appropriate compensation amount was clear at that point and should have been paid.  Yet, because of Mr. Donat's discriminatory/retaliatory attitude toward Mr. Thacker, he did not receive that compensation.

59. Mr. Thacker's termination was a direct result of the interference caused by Mr. Donat.  Mr. Thacker had his most productive year and months immediately preceding the termination of his employment.

60. Mr. Thacker had received no negative feedback or received any allegations of workplace misconduct in the previous 14 months before Mr. Donat learned of Mr. Thacker's relationship with Ms. Lisson and Mr. Thacker and Ms. Lisson began resisting Mr. Donat's obsessive and jealous harassment of Ms. Lisson.

61. As the resistance escalated, Mr. Donat increased his criticism of Mr. Thacker and the alleged complaints against him. Ultimately, in the March 2 meeting, Mr. Mortenson and Mr. Walker spent two hours discussing with Mr. Thacker their desire to move forward with a productive employment relationship along with their desire to avoid discussion of the specific issues between Mr. Donat and Mr. Thacker. But according to Mr. Mortenson and Mr. Walker, Mr. Donat subsequently brought additional issues to their attention that they determined justified the termination of Mr. Thacker's employment.

62. Mr. Donat learned of Mr. Thacker's relationship with Ms. Lisson on January 10, 2017 and began experiencing their objections/resistance to his ongoing harassment within the weeks following that disclosure.  Mr. Donat's illegally motivated efforts against Mr. Thacker began shortly thereafter and ultimately culminated in the termination within a matter of weeks.

63. Mr. Donat was a third party acting in his personal capacity who obviously knew about Mr. Thacker's employment relationship and interfered with it based on his

1  personal discriminatory/retaliatory motives toward Mr. Thacker—Mr. Donat's third
2  party status was confirmed by Mr. Mortenson and Mr. Walker's statements that they
3  made the decision to end the employment, not Mr. Donat.

### **Count One (Violation of Title VII)**

5  64.  Mr. Thacker incorporates herein all previous allegations in this Complaint.

6  65.  GPSI engaged in a number of materially adverse employment actions
7  against Mr. Thacker including, among other things, refusing to compensate Mr. Thacker
8  for the Amerisure deal in the same manner that others have been compensated under
9  similar circumstances; giving Mr. Thacker a significantly smaller profit-sharing bonus
10 than justified by his job performance; terminating Mr. Thacker's employment; and
11 defaming Mr. Thacker to third parties.

12 66.  GPSI engaged in the above adverse actions based on one or more illegal
13 retaliatory or discriminatory motives under Title VII of the Civil Rights Act of 1964;
14 specifically, GPSI retaliated against Mr. Thacker based on his protected objections or
15 opposition to the ongoing sexual harassment of Ms. Lisson by GPSI's President/CEO
16 Mr. Donat and/or retaliated against Mr. Thacker for Ms. Lisson's objections and
17 opposition to the sexual harassment she was suffering and/or discriminated against Mr.
18 Thacker based on his association with a female, Ms. Lisson, who was the subject of
19 gender discrimination including quid pro quo harassment under Title VII.

20 67.  On November 6, 2017, Mr. Thacker filed a charge with the Equal
21 Employment Opportunity Commission asserting the above violations of Title VII and
22 requested that the agency immediately dismiss the charge and issue a notice of right to
23 sue.

24 68.  The EEOC issued its notice of right to sue on November 28, 2017.

25 69.  As a direct result of GPSI's conduct described above, Mr. Thacker has
26 suffered emotional distress, reputational harm, lost income in the form of past, present
27 and future wages and benefits, and other monetary and non-monetary benefits due him.

28

70. As a direct result of GPSI's conduct described above, Mr. Thacker seeks recovery of damages in an amount to be proven at trial including damages for economic loss and compensatory damages for pain and suffering, emotional distress, harm to reputation and other losses.

71. GPSI's conduct described above was aggravated, outrageous, and guided by an evil mind; accordingly, Mr. Thacker is entitled to an award of punitive damages against GPSI.

72. Mr. Thacker is entitled to recover his attorneys' fees and costs incurred in prosecuting his claim for violations of Title VII.

### Count Two (Intentional Interference with Contractual Relations)

73. Mr. Thacker incorporates herein all previous allegations in this Complaint.

74. A contractual relationship existed between Mr. Thacker and GPSI in that every employment relationship is contractual in nature.

75. Mr. Donat knew of that contractual relationship.

76. Mr. Donat intentionally interfered with that relationship, causing the termination of that relationship.

77. Mr. Donat's interference was wrongful in that he acted with the discriminatory/retaliatory motives discussed above and his interference involved intentionally false and unfounded statements about Mr. Thacker.

78. As a direct result of Mr. Donat's interference, Mr. Thacker has suffered emotional distress, reputational harm, lost income in the form of past, present and future wages and benefits, and other monetary and non-monetary benefits due him.

79. As a direct result of Mr. Donat's conduct described above, Mr. Thacker seeks recovery of damages in an amount to be proven at trial including damages for economic loss and compensatory damages for pain and suffering, emotional distress, harm to reputation and other losses.

20071-20071-00001\JXS\KMR\3135073.1

80. Mr. Donat's conduct described above was aggravated, outrageous, and guided by an evil mind; accordingly, Mr. Thacker is entitled to an award of punitive damages against Mr. Donat.

### Count Three (Defamation/Defamation *Per Se*)

81. Mr. Thacker incorporates herein all previous allegations in this Complaint.

82. As detailed above, personally and/or on behalf of GPSI, Mr. Donat published many false and defamatory statements regarding Mr. Thacker to third parties, including Ms. Lisson and Mr. Thacker's former coworkers, and other false and defamatory statements regarding Mr. Thacker to other third parties such as GPSI management.

83. As detailed above, Mr. Donat personally published many false and defamatory statements regarding Mr. Thacker to third party GPSI management personnel.

84. The specific statements that Mr. Thacker alleges are defamatory are as follows: (a) Mr. Thacker bought toys illegally with the company credit card; (b) Mr. Thacker is a felon, (c) Mr. Thacker stole, (d) Mr. Thacker stopped working prior to his termination; (e) Mr. Thacker was the subject of an ongoing prosecution for felony theft, and (f) Mr. Thacker has herpes.

85. Mr. Donat's false statements impeached Mr. Thacker's reputation or prejudiced his ability to engage in his profession, trade or business.

86. Mr. Donat published the false statements with knowledge, recklessly disregarding, or negligently failing to ascertain that the statements were false.

87. Based on the nature of the defamatory statements detailed above, damages are presumed.

88. As a direct result of Defendants' conduct described above, Mr. Thacker has suffered emotional distress, anxiety, reputational harm, lost income in the form of

past, present and future wages and benefits, and other monetary and non-monetary benefits due him.

89. As a direct result of Defendants' conduct described above, Mr. Thacker seeks recovery of damages in an amount to be proven at trial including damages for economic loss and compensatory damages for pain and suffering, emotional distress, harm to reputation and other losses.

90. Defendants' conduct described above was aggravated, outrageous, and guided by an evil mind; accordingly, Mr. Thacker is entitled to an award of punitive damages against Defendant.

## Count Four (False Light Invasion of Privacy)

91. Mr. Thacker incorporates herein all previous allegations in this Complaint.

92. As described above, personally and/or on behalf of GPSI, Mr. Donat publicized false information or innuendo concerning Mr. Thacker's character, history and activities that places Mr. Thacker in a false light that would be highly offensive to a reasonable person.

93. Mr. Donat had knowledge or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

94. As a direct result of Defendants' conduct described above, Mr. Thacker has suffered emotional distress, reputational harm, lost income in the form of past, present and future wages and benefits, and other monetary and non-monetary benefits due him.

95. As a direct result of Defendants' conduct described above, Mr. Thacker seeks recovery of damages in an amount to be proven at trial including damages for economic loss and compensatory damages for pain and suffering, emotional distress, harm to reputation and other losses.

20071-20071-00001\JXS\KMR\3135073.1

96. Defendants' conduct described above was aggravated, outrageous, and guided by an evil mind; accordingly, Mr. Thacker is entitled to an award of punitive damages against Defendant.

### Count Five (Violation of the Fair Credit Reporting Act)

97. Thacker incorporates herein all previous allegations in this Complaint.

98. Mr. Donat, personally and/or on behalf of GPSI, obtained a consumer credit report under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, long after the conclusion of Mr. Thacker's employment, without a permissible purpose under that law and/or under a false pretense. Mr. Donat then used the information obtained in the report to disparage Mr. Thacker to his former co-workers and others.

99. A "credit report" means any report "bearing on a consumer's credit worthiness [creditworthiness], credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living." 15 U.S.C. § 1681a(d)(1).

100. Permissible purposes include only: "use in connection with a credit transaction; considering or evaluating employment; insurance underwriting; or an assessment of credit risk;" here, there was no permissible purpose for Galbut & Galbut, P.C., GPSI, or Mr. Donat to obtain a credit report on Mr. Thacker.

101. As a direct result of Defendants' conduct described above, Mr. Thacker has suffered emotional distress, reputational harm, lost income in the form of past, present and future wages and benefits, and other monetary and non-monetary benefits due him.

102. As a direct result of Defendants' conduct described above, Mr. Thacker seeks recovery of damages in an amount to be proven at trial including damages for economic loss and compensatory damages for pain and suffering, emotional distress, harm to reputation and other losses.

- 15 -

103. Defendants' conduct described above was aggravated, outrageous, and guided by an evil mind; accordingly, Mr. Thacker is entitled to an award of punitive damages against Defendant.

104. Mr. Thacker is entitled to recover his costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a).

## Count Six (Intrusion Upon Seclusion Invasion of Privacy)

105. Mr. Thacker incorporates herein all previous allegations in this Complaint.

106. As described above, GPSI and/or Mr. Donat investigated or examined Mr. Thacker's private affairs by illegally obtaining a credit report or background investigation into his confidential, private affairs with no legitimate purpose.

107. After illegally obtaining the credit report, GPSI and/or Mr. Donat subsequent disclosed and misused the confidential, protected information obtained, including sharing it with Mr. Thacker's friends and former co-workers.

108. By engaging in the above conduct, GPSI and/or Mr. Donat intentionally intruded upon the solitude or seclusion of Mr. Thacker and his confidential, private affairs or concerns in a manner that would be highly offensive to a reasonable person.

109. As a direct result of Defendants' conduct described above, Mr. Thacker has suffered emotional distress, reputational harm, lost income in the form of past, present and future wages and benefits, and other monetary and non-monetary benefits due him.

110. As a direct result of Defendants' conduct described above, Mr. Thacker seeks recovery of damages in an amount to be proven at trial including damages for economic loss and compensatory damages for pain and suffering, emotional distress, harm to reputation and other losses.

111. Defendants' conduct described above was aggravated, outrageous, and guided by an evil mind; accordingly, Mr. Thacker is entitled to an award of punitive damages against Defendant.

**Count Seven (Interference with Prospective Business Relations)**

112. Mr. Thacker incorporates herein all previous allegations in this Complaint.

113. A claim for wrongful interference with a business expectancy requires proof of the following elements: (1) the existence of a valid business expectancy; (2) the interferer's knowledge of the business expectancy; (3) the interferer intentionally induced or caused termination of the business expectancy; and (4) damage suffered as a result of termination of the business expectancy. *Dube v. Likins*, 216 Ariz. 406, 412, 167 P.3d 93, 99 (Ct. App. 2007).

114. Mr. Thacker has had what he believed was a valid business expectancy with some prospective employers since his termination from GPS Insight.

115. Upon information and belief, Mr. Donat and GPS Insight interfered with that expectancy by making false statements to those prospective employers about Mr. Thacker.

116. Mr. Thacker has suffered damges as a result.

117. GPS Insight and Mr. Donat can be held liable for any harm they caused.

WHEREFORE, Plaintiff Jeremy Thacker prays for judgment against Defendants GPS Insight, LLC and Robert J. Donat, individually as follows:

A. For an award of back pay in an amount sufficient to make Plaintiff whole for the loss of income and benefits resulting from Defendants' conduct;

B. For an award of front pay in an amount sufficient to compensate Plaintiff for all future lost income and benefits resulting from Defendants' conduct;

C. For an award of compensatory damages for pain and suffering, emotional distress, harm to reputation and other losses incurred by Plaintiff as a result of Defendant's conduct;

D. For an award of punitive damages;

E. For an award of any additional statutory damages under 15 U.S.C. § 1681n;

1  F. For an award of liquidated damages under 18 U.S.C. § 2724;

2  G. For an award of prejudgment and post-judgment interest;

3  H. For an award of attorneys' fees and related expenses;

4  I. For an award of Plaintiff's costs of suit incurred herein; and

5  J. For an award of such other relief as the Court may deem just and proper.

6  DATED this 27th day of July, 2018.

**JABURG & WILK, P.C.**

 _s/ Jeffrey A. Silence_____
Kraig J. Marton
Jeffrey A. Silence
3200 N. Central Avenue, 20th Floor
Phoenix, AZ 85012
Attorneys for Plaintiff