**Jaburg & Wilk, P.C.**
3200 N. Central Avenue, 20th Floor
Phoenix, AZ 85012
602.248.1000

Kraig J. Marton (003816)
kjm@jaburgwilk.com
Jeffrey A. Silence (029143)
jxs@jaburgwilk.com
Laura Rogal (025159)
lar@jaburgwilk.com
Attorneys for Plaintiff Thacker

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jeremy Thacker,<br><br>            Plaintiff,<br><br>v.<br><br>GPS Insight, LLC; Robert Donat, individually,<br><br>            Defendants. | Case No. 2:18-cv-00063-DJH<br><br>**Plaintiff's Response to Defendants' Motion For Partial Summary Judgment**<br><br>**(Resubmitted, 17 pages)**<br><br>(Assigned to Honorable Diane J. Humetewa) |

Defendants have violated their duty of candor by failing to present material facts. As with their MIDP disclosures, they have only presented the one sided version of the "facts" that supports their defenses. They have also presented "facts," including documents, witnesses, and defenses that have never been disclosed.

This case is simple. Donat was jealous of Thacker and Lisson's romantic relationship ("The Relationship"). (Ex. AA[1]; AB; AC; AD; D 212-16; BU; BV; K 52). His ego was crushed upon learning Lisson chose Thacker over him. (*Id.;* BZ § D)

---

[1] Unless otherwise noted, all citations refer to Thacker's Exhibits A through CA. By way of example, page 40 of Exhibit A will be referred to as simply "(A 40)." Page 40 of Defendants' exhibit 20 will be cited as "(20 p. 40)." Portions of Thacker's exhibits are highlighted in yellow for emphasis. In his attached declaration, Thacker lays foundation and establishes authenticity for his exhibits. (See N § V).

When Thacker and Lisson ("T/L") complained to their managers, Walker and Mortensen ("W/M"), about Donat's harassment, they were offered no protection. (AE 5; AF; AG; B 52). Instead, Thacker was terminated less than two months after his first complaint and four days after his most recent complaint. (F 58-59; AH 46; A 60; B 52). Thacker was told that he was being terminated for his own mental health. (C 7). They now claim that Walker made the decision to terminate him for "insubordination." (F 8-9; AI 98; AH; E 186).

W/M knew that Donat would not stop harassing T/L. (A 44, 52; B 2, 13; H 135-136; BZ § E). Indeed, Donat sent 104 texts to Lisson the same day Walker asked him not to contact Lisson. (AK 68; D 250-251). W/M also knew that Thacker would not stop complaining about Donat's interference with his and Lisson's employment and their refusal to pay him for Amerisure because Donat would not approve it. (A 5, 10, 13-14, 24, 27, 32, 38, 40; B 12; AE). W/M knew standing up to Donat or requesting Thacker be paid on Amerisure would put their jobs in jeopardy. (B 14, 23-25; AN; AG; AE). So, they made a selfish choice—they terminated Thacker. (A 24, 34-36, 44-45, 59). The extent of Donat's involvement in the termination (and his efforts to interfere with Thacker's employment) is disputed, as is just about every other "fact."

## I.    Counterstatement of Facts

In 2016, Thacker was promoted to the Government Sales team (E 91-92). At the same time, Amerisure, a relationship that Thacker had nourished for years, agreed to start referring customers. Walker promised Thacker that he would receive a "more than fair" payout for Amerisure. (AL). In July 2016, Amerisure referred their first units. (A 40-41). When Thacker approached W/M about payment for Amerisure in 2017, T/M avoided him for months before admitting they could <u>not</u> pay him due to Donat. (U; AE).

In December 2016, Thacker started dating Lisson. (J 126). Donat's prior romantic relationship with Lisson was a secret. (J 128). On January 10, 2017, Lisson told Donat about The Relationship. (AJ). Jealous, he defamed Thacker by telling Lisson that Thacker owed GPSI money and had STDs/herpes. (K 49; AB; AD; AZ).

2

The next day, Thacker showed a note to W/M containing two goals: "LCRA" and "~~Kristin~~," which referred to Lisson. (J 176; F 58-59). W/M told Thacker not to let Donat see the note because he would get upset[2]. (*Id.*). Thacker then told W/M that Lisson had told Donat about The Relationship; Walker responded, "Well that explains why Rob came by my office earlier asking about you transferring to Chicago!" (F 39; E 243; AH). W/M warned Thacker to keep off Donat's radar because he will want to fire him. (AH 46-47; C 20-21).

### A.     T/L Object to Donat's Unlawful Discrimination and Interference.

When Donat refused to accept her decision, Lisson sent a text to Donat on January 17, 2017, "I am not okay with your attempts to undeservedly discredit Jeremy. I am not okay with feeling like I'm not being heard," and "I am not okay with having to justify or explain with whom I spend my time right now." Ending her text asking him to "let her go." (AO). Donat replied he did not "deserve to be lionized" and that he "understood why Elliot [Batcheller] always called her a bitch." (K 41; D 207-208).

On February 1, 2017, Thacker texts Mortensen stating, "I've got an owner breaking laws and every rule of decency in regards to my personal life." (AG).

On February 13, 2017, Donat told Lisson that her reputation and employment were at stake due to The Relationship. (AR; AS; AT). Donat refused to give examples and forbid her from telling Walker what he said. (M 3). Thacker learned of this conversation after Lisson asked him to come over. (AU). Upon arrival, he found Lisson hyperventilating in a panic attack. (*Id.*). That same day and again the next day, Lisson complained about Donat to Walker. (BG; K 77-82; E 49-51). Lisson complained again in her March 9, 2017 email to GPSI management. (M 4; K 137-139, 195-196, 202).

On February 16, 2017, Mortensen told Thacker that Donat had been monitoring his attendance[3]. (A 30, 51). When Mortensen encouraged Thacker to have "thick skin,"

---

[2] W/M claim to not have known Donat and Lisson had a prior romance, but Walker knew Donat had a "crush" on Lisson. (E 68-69).  In 2016, Lisson told Walker that Donat kissed her (on two separate occasions). (K 72-73, 75-76).

[3] Donat told Lisson he was doing so to ensure T/L were not together. (K 50-51; M 3).

3

Thacker complained to Mortensen about Donat's threats and interference with T/L's employment, including Lisson's panic attack. (AM). Later in email, Thacker told him:

> I'm very conflicted, angry, scared, and worried. I am not OK with what has happened and I cringe at the thought of being associated with him much less helping to solidify his position of power. I feel trapped. I feel like I work for Donald Trump and he's trying to grab my girlfriend's pussy every day. I understand your advice today and I agree that having thick skin is valuable but at what point does this become unacceptable? At what point am I not complicit in his behavior? (AM[4]).

Mortensen responded, "You're not in an easy position…Professionally, I want to help you keep your job and be successful…Personally, I want you to be a happy person…I don't know how possible both will be…I'm not sure how to handle or what to do." (AF).

On February 24, 2018, Thacker sent a text message to Mortensen stating, "If Rob is not willing to pay me because of who I am dating, I shouldn't be the only one willing to say it." (AE).

On March 2, 2018, Thacker had a long meeting ("The Meeting") with W/M in which he again objected to Donat's harassment of T/L. For example, Thacker stated, "I want a non-hostile workplace from the owner."[5] (A 60). He also stated Donat was "trashing" him by spreading personal data and retaliating by cutting his profit-sharing bonus. (A 47; B 18, 22, 33). Thacker discussed other ways in which Donat was harassing him in a portion of The Meeting that was not recorded. (See B generally; J 176; N ¶¶ 5, 6).

---

[4] Defendants correctly state that Thacker asked Mortensen to keep—*this*—conversation private. Defendants fail to address the report made to W/M on January 11, the objections to Mortensen before and after this email, Lisson's objections to Donat directly on January 17, Lisson's objection to Walker directly on February 13 and 14, and Thacker's request to have a non-hostile workplace at the March 2 meeting. (AG; AE; A 60). Moreover, Defendants do not address Thacker's legitimate reasons for requesting discretion—negligence, fear, and retaliation. (AM).

[5] Regarding this complaint, Defendants claim that "Mortensen understood that Thacker was referring to issues Thacker had with Elliot Batcheller." (Doc. 112 at FN2). This is disputed since Thacker said he was specifically complaining about the "owner" of GPSI.

As for Amerisure, Thacker requested to meet with W/M to discuss what payment would be "fair." (U; AE 5:10-5:38PM). W/M forgot to follow up with Thacker about Amerisure. (A 40; B 40-42). In The Meeting, Walker stated the "value of the program [Amerisure] is solidified now," but "the timing is just not right." (Ex. A 41; BW; A 40-41). By that time, Amerisure had generated over 1,100 units and other salespeople had received commission for Amerisure. (A 40-41).[6]

In The Meeting, W/M agreed that Thacker was entitled to work in a non-hostile workplace but refused to discuss Donat's unlawful discrimination/interference. (A 60; B 52; C 20). W/M said Thacker could not be paid on Amerisure because Donat would not approve it. (A 10, 14, 24, 41, 51; B 10). Mortensen knew Thacker was being "thrown to the wolves," or more aptly, the wolf. (A 42). W/M were in a bad spot as resisting Donat was futile. (A 44, 52; B 2, 13; H 135-136).

## B. Thacker is Fired the Same Month He Broke Sales Records

Thacker achieved exceptional sales results in 2016 to 2017 breaking the record for units sold in a month with 1,500 in February 2017. (B 22, 38-39; AX; N § XIII). With Amerisure, Thacker accounted for more sales than the other 16 reps combined that month. (AY; N § XIII). Yet, he was terminated on March 6, 2017. (E 167).

## C. Donat was Involved in the Termination Decision and/or He Interfered.

During Thacker's termination, Defendants' narrative was that Donat did take part in the decision to terminate Thacker. (BE; BF; AH; X). Defendants now claim that Donat was not involved in the decision to terminate Thacker and also deny he interfered with Thacker's employment despite his own words. (D 15-16; BS).

It is undisputed that Donat (i) reported numerous allegations about Thacker to W/M after learning of The Relationship and continuing through the date of his termination; (A 24, 30, 35; B 11-12; C 7-10, 20-21; L 40); (ii) disparaged/defamed Thacker to W/M, Lisson, and other GPSI employees; (A 31, 44, 51-54; B 2; BT); (iii)

---

[6] Walker's claim that GPSI does not pay commission after employment is contradicted by the GPSI Sales Policy. (25 at 3; BY 9).

unilaterally terminated Lisson a week after Thacker; (D 17; E 187); (iv) spotlighted Thacker's alleged issues to W/M in the March 3 meeting where Thacker's termination was decided; and (v) discussed Thacker's severance offer with W/M before it was presented to Thacker on March 6. (C at 7-8, 11).

Walker said it best: "[Donat] meddles[7] in everything. And he can. He is the fucking owner of the company. That's what he does. He is not going to stop." (A 52; B 13).

## II.     Fact Questions Prevent Summary Judgment on Thacker's Retaliation Claim.

### A.     It is a Fact Issue if Walker Knew of Thacker's Protected Complaints.

Defendants claim that Walker made the decision to terminate Thacker without prior knowledge of any of Thacker's protected complaints. T/L allege that they complained to Walker and also that Mortensen would have discussed those complaints with Walker.

There is evidence that Thacker complained to Walker about unlawful discrimination in his January 11, 2017 meeting with W/M. (I 31; F 39). Thacker complained again to Walker in The Meeting. (A 60). Thacker also made complaints to Mortensen, orally and in writing, about unlawful discrimination. (AE; AG; AM).

If Walker did not know Donat was harassing Thacker, then what did Walker think Thacker was talking about when Thacker stated that he avoids Donat, and if he has to talk with Donat, it will not end well? Walker responded to these comments in The Meeting by stating: "The problem with that is that I can't tell him that as a reason for you not being here…we have to have a legitimate reason for that. I can't use that as one of them, even though it might be legitimate." (B14). Apparently, Walker is claiming that unlawful harassment was not a "legitimate reason" for Thacker to avoid Donat.

As set forth above, on February 13 and 14, 2017, Lisson complained to Walker about unlawful discrimination/interference—in person and in writing. (BG; K 77-82; E 49-51). If only Lisson complained to Walker, Thacker could prevail by showing that he

---

[7] Merriam Webster Dictionary defines meddle as "<u>interfere</u> without right or propriety."

was terminated because of her protected actions. In *Thompson v. N. Am. Stainless*, LP, 562 U.S. 170, 178–79 (2011), the plaintiff and his fiancé worked for the same employer. Plaintiff's fiancé filed a charge of sex discrimination. Three weeks later (and after learning of the charge), employer fired the plaintiff. The Court found a spouse was within the "zone of protection" under Title VII and was not an "accidental victim" because of intent. Thacker is in the "zone of protection" as a GPSI employee terminated because Lisson complained of harassment. He is not an "accidental victim."

The Court need not even decide whether Thacker was in the zone of protection under *Thompson* based on Lisson's complaints because Thacker himself complained to Walker about harassment/interference against him and Lisson, a clear victim of sex discrimination. 42 U.S.C. 2000e-3.

Thacker also complained to Mortensen; Walker's claim that Mortensen did not talk with him about any of Thacker's objections is a credibility determination to be made by the jury. *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1112 (9th Cir.2004).

**B.     Mortensen and Donat Were Involved in the Termination Decision.**

Assuming Mortensen did not report Thacker's complaints to Walker, Defendants admit Mortensen "agreed" with Walker's decision. (Doc. 112 at 6:3-4). Mortensen's agreement that Thacker should be terminated, alone, creates a fact issue as to his involvement. As set forth above, (i) Mortensen was Thacker's manager, (ii) Mortensen attended The Meeting in which Thacker was "insubordinate," (iii) Thacker had record-breaking month of sales and was a senior employee so terminating him was not a routine decision, and (iv) W/M both managed Thacker.

Walker himself admitted talking with Mortensen for a half hour after the March 2 meeting and then for "quite a while [on March 3]" before "the conclusion that we probably need to part ways…On the heels of that…he [Rob] brought some things to our attention…activities for last week…[Rob] said…I want you to be aware." (C 7-8).

Defendants state in the MSJ, "During The Meeting at which W/M discussed how to terminate Thacker, Donat interrupted and provided a recording Thacker had made of

141296755.1

himself talking—and being abusive to—a call-center employee." (Doc. 112 at FN4). Although claiming Walker made the decision, they admit Donat participated in and signed off on the severance offered to Thacker. (Doc. 112 at 6:5-6). Donat testified, "I became involved as the owner of the company with a potentially difficult employee, based on previous communications with Mr. Walker, as to how to communicate his being terminated, as well as how to present a severance package." (D at 96). Alone, this creates a fact issue.

Even if Donat denied any involvement, Thacker has presented significant evidence showing that his denial is a fact issue. (X). As set forth above, Donat repeatedly complained to Walker about Thacker, brought complaints about Thacker to Walker, disparaged Thacker to Lisson and others, and terminated Lisson (on his own) a week after Thacker's termination. Donat did not deny being involved in the termination decision, and his actual role is a determination for the jury to resolve.

### C. GPSI is Liable Under Cat's Paw.

"Title VII may still be violated where the ultimate decision-maker, lacking individual discriminatory intent, takes an adverse employment action in reliance on factors affected by another decision-maker's discriminatory animus." *Galdamez v. Potter*, 415 F.3d 1015, 1026 n. 9 (9th Cir.2005); *Staub v. Proctor Hosp.*, 562 U.S. 411, 419 (2011); *Poland v. Chertoff*, 494 F.3d 1174, 1182–83 (9th Cir. 2007).

Whether Walker was influenced by the discriminatory intent of Donat and/or Mortensen is a fact issue. Donat was motivated by his jealousy and Lisson's rejection of his sexual advances in favor of Thacker. Mortensen wanted to protect his job because Donat would not stop harassing T/L, and T/L would not stop complaining.

### D. GPSI is Liable for Creation of a Hostile Work Environment.

The irony is that if neither Donat nor Mortensen discussed T/L's complaints with Walker, GPSI is liable for failing to take prompt remedial action. *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998).

8

Defendants have not presented <u>any</u> evidence showing that they took <u>any</u> remedial action to address <u>any</u> of T/L's complaints. W/M did <u>nothing</u> to protect either of them. Thacker could therefore proceed with his Title VII retaliation claim based on the working conditions being hostile, even if there was no adverse employment action (termination and failure to pay him for Amerisure) taken against him.

**E.      It is a Fact Issue Whether Thacker was Terminated for Cause.**

Defendants argue that Thacker was terminated because of his poor attendance, bad attitude, and insubordination. Defendants' excuses are fact issues for the jury to resolve.

Thacker did not have any issues with attendance from 2016 through 2017. (B 51; A 56). He had permission for his flexible schedule. (A 14, 56). In The Meeting, W/M admitted to not caring about Thacker's attendance because he was working hard and delivering sales. (A 45, 59).

As for Thacker's supposed bad attitude, Defendants do not provide a single document evidencing any such complaint prior to Donat learning of The Relationship on January 10, 2017. Defendants neglected to attach W/M's communications telling Thacker they liked and supported him up until he was fired. (AF; BA; BB). Indeed, in The Meeting, W/M said they liked Thacker and felt he was being thrown to the wolves. (A 42-43, 59; B 36-37).

Lacking evidence, Defendants cite to out-of-context statements made by Thacker in The Meeting as proof of his bad attitude and insubordination. T/L had been complaining about Donat's harassment dating back to January 2017. Thacker was understandably upset with W/M's refusal to take any action (AM, A 32). GPSI had no HR department, and W/M had done nothing to protect him or Lisson for two months. (B 57; E 29-30). As stated to Mortensen on February 16, Thacker felt "conflicted, angry, scared, and worried." (E 52; AM). He was "not OK with what has happened." (*Id.*). He "cringe[d] at the thought of being associated with [Donat] much less helping to solidify his position of power." He felt "trapped." (*Id.*).

141296755.1

Defendants also fault Thacker for saying in The Meeting that he did not like Donat and avoided him. It is not a job requirement to "like" the owner of a company, and Thacker had many good reasons not to like Donat as of March 2. An employer cannot create a hostile work environment and then fault the employee for not "liking" the harasser and/or avoiding them. Thacker's use of curse words was common at GPSI, as evidenced by Walker's own use of the word "fuck" 26 times in The Meeting. (N ¶ 132).

Defendants also suggest that Thacker would not accept responsibility for his actions. (9 at 32). That is false and not a reason for his termination. (V; B 3:20-24).

It was also alleged Thacker was looking for other jobs. Thacker did not do so until after it was clear that W/M were unable and/or unwilling to protect T/L from Donat. (N § XIV). Thacker repeatedly tells W/M in The Meeting that he wants to continue to work at GPSI, especially because his hard work had resulted in his promotion to Gov Sales. (T; AE 6; AG). If anything, W/M were encouraging Thacker to consider alternatives, so they did not have to address Donat's behavior. (AF; AE).

**F.     Defendants' Other Allegations are Disputed and Not Relevant.**

Due to Donat's increased scrutiny, such as calling Thacker's ex, Chanel Dugan, to find "dirt" on him, Thacker wiped his work pc[8] of personal information that he believed Donat would use as a weapon. (AH 47; M 2; Z; BZ § C). He, however, backed up and provided all work-related data upon his termination. (AH 46-47). Defendants have admitted all data was recoverable and have not identified any missing data. (J 15-20). This allegation was not a basis for his termination and cannot be a basis for an after-acquired evidence ("AAE") defense because Thacker was still employed when he wiped his pc. (J 15).

As for prior complaints, Thacker had complained about non-payment for certain deals over the years, which were discussed in The Meeting. (B 34). His prior complaints about compensation were well justified and have no relevance to this matter. (BZ § F).

---

[8] Thacker's friend, Robert Dennis ("Dennis"), did <u>not</u> participate in the pc wiping. (BX).

## III.    Thacker's Associational Discrimination Claim is Cognizable.

Thacker has also alleged an associational discrimination claim based on his association with Lisson. Defendants claim that Thacker's associational sex discrimination claim is not cognizable because it is different than the more commonly asserted associational discrimination claims based on race or national origin. *See Holcomb v. Iona Coll.*, 521 F.3d 130 (2d Cir. 2008); *Deffenbaugh–Williams v. Wal–Mart Stores, Inc.*, 156 F.3d 581 (5th Cir.1998).

Although these cases involve relationships between people of different races and national origins, there is nothing in any of these decisions that suggests their holdings are so limited. The lynchpin is whether the plaintiff is being discriminated against because of his or her association with a person in a protected class.

Thacker was discriminated against because of his complaints to W/M and his association with Lisson, a member of a protected class.

## IV.    Thacker has Presented Direct Evidence of Retaliation and Discrimination.

When there is direct evidence of retaliation/discrimination, plaintiff does not have to demonstrate any pretext. *Enlow v Salem-Keizer Yellow Cab Co.*, 389 F. 3d 802 (9th Cir. 2003); *Chuang v. University of California, Davis*, 225 F. 3d 1115 (9th Cir. 2000).

Thacker's claims are based largely on direct evidence. There is no evidence that Donat ever said anything disparaging about Thacker prior to January 10, 2017. (BD; M 1:20-2:4; P). Immediately upon learning of The Relationship, however, Donat accused Thacker of having herpes, stealing money, being a terrible employee with attendance problems, and having a bad attitude. In defense of Thacker's termination, Donat called Thacker a "fucktard," "dick," "sociopath," "creepy unemployed loser," "baby," "idiot," and "piece of shit." (N ¶ 29; BH; BI; BJ; BF; BK). Donat tried to have Thacker arrested, pulled an invasive consumer report and distributed it to other employees, before attempting to have Dennis fired from his new job after quitting GPSI in protest. (39; BM; BL). This is all direct evidence of retaliation.

11

**V.     There is also Significant Circumstantial Evidence of Retaliation.**

There is also significant circumstantial evidence summarized below.

1. **Temporal proximity**. Thacker first complained of discrimination on January 11, 2017. Defendants claim that Walker made the decision to terminate Thacker—<u>within a few hours of</u>—Thacker objecting to a hostile workplace in the March 2 meeting and less than two months after his first complaint. (A 60; B 52). "Depending on the circumstances, three to eight months is easily within a time range that can support an inference of retaliation." *Coszalter v. City of Salem,* 320 F.3d 968, 977–78 (9th Cir.,2003) *Flores v. City of Westminster,* 873 F. 3d 739, 749-750 (9th Cir., 2017); *Ellins v. City of Sierra Madre,* 710 F.3d 1049, 1062–63 (9th Cir, .2013).

2. **GPSI's failure to make a reasonable investigation into Thacker's and Lisson's complaints**. *Fonseca v. Sysco Food Services. of Arizona. Inc.,* 374 F.3d 840, 850 (9th Cir., 2004); *Riddle v. Washington*, 454 Fed. Appx. 613, 615, 2011 WL 5024195 (9th Cir., 2011); *Arjangrad v. JPMorgan Chase Bank*, 2012 WL 1890372 (D. Or., 2012).

3. **Failure to document (let alone contemporaneously document) any alleged performance issues during Thacker's four-year employment**. *Riddle v. Washington*, 454 Fed. Appx. 613, 614, 2011 WL 5024195 (9th Cir., 2011); *Zimmerman v. First Capital Corp*., 251 F. 3d 376, 383 (2nd Cir., 2001); *Burton v. Freescale Semiconductor, Inc*., 798 F. 3d 222, 239-240 (5th Cir., 2015); *Hurlbert v. St. Mary's Health Care System, Inc*., 439 F. 3d 1286, 1298-1299 (11th Cir., 2006).

4. **Failure to provide progressive discipline**. *Earl v. Nielsen Media Research, Inc*., 658 F.3d 1108, 1117 (9th Cir., 2011); *Diaz v. Eagle Produce Ltd. Partnership*, 521 F.3d 1201, 1214 (9th Cir., 2008); see also *Johnson v. Lehman,* 679 F.2d 918, 922 (D.C. Cir., 1982).

5. **W/M's after-the-fact excuses for termination are based on their subjective determinations that he had a bad attitude and was insubordinate**. *Warren v. City of Carlsbad*, 58 F. 3d 439, 443 (9th Cir., 1995); *Jauregui v. City of Glendale*, 852 F.2d 1128, 1136 (9th Cir., 1988).

12

6. **The proffered reasons for termination are false and/or not supported by any credible evidence**. *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 147 (2000); *Bagley v. Bel-Aire Mechanical Incorporated*, 647 Fed. Appx. 797, 2016 WL 1393428 (9th Cir., 2016); *Keyser v. Sacramento City Unified School District*, 265 F. 3d 741, 752 (9th Cir., 2001).

7. **GPSI provided shifting reasons for termination**. *Hernandez v. Hughes Missile Systems Co.,* 362 F. 3d 564, 569 (9ᵗʰ Cir., 2004). *Cole v. Ruidoso Municipal Schools*, 43 F. 3d 1373, 1382 (10ᵗʰ Cir., 1994).

## VI.     Whether Donat Interfered with Thacker's Employment is a Fact Issue.

Donat claims that there is no evidence of any interference, and even if there was, there is no evidence that Walker terminated Thacker because of his interference. Actually, there is significant evidence of Donat's interference including his complaints to W/M (A 44); an inquiry to Walker about transferring Thacker to Chicago (AH); repeated inquiries to W/M about Thacker's whereabouts (A 44); catastrophizing a complaint about Thacker to Walker (A 35); and personally investigating Thacker's calls. (AH). On March 5, Donat stated in a text to his management team: "I want the fundamental reason for termination to be categorized as his culture killing nature." (X).

There is also significant evidence that W/M made the decision to terminate Thacker <u>because</u> of the things Donat said and did. For example, Donat characterized the recorded call as the "push over the cliff/final straw/nail in the coffin," and says Walker was only "likely" to fire Thacker prior to hearing the recording. (X; BE; BF; AH). On the day of Thacker's termination, Walker revealed to Batcheller that he and Mortensen did not know they were firing Thacker until <u>March 3</u>—the same morning Donat brought them Thacker's recorded call. (BR). Mortensen confirmed the events of March 3 in a separate conversation with Lisson (Q). Walker messaged Batcheller about how he was amused by Donat's "talk track" that he would not have brought the recorded call to them if he had known they were firing Thacker. (BR). Batcheller replied, "That's now the story so we'll just have to get used to it." (BR).

13

In *Wagenseller,* the Arizona Supreme Court held that a supervisor can be held liable for intentional interference with contract for interfering with an employee's at-will employment agreement for their improper motives. The Court held, "We also see no policy justification for such a rule, as it would effectively grant permission to a supervisor to act, even with the worst of motives and methods, with impunity. To adopt such a rule would place the supervisor beyond the inhibitions of tort law. We decline to endorse such a rule." *Wagenseller v. Scottsdale Mem'l Hosp.,* 147 Ariz. 370, 388, 710 P.2d 1025, 1043 (1985).

If Donat was not involved in the decision to terminate Thacker, he certainly interfered with Thacker's employment.

**VII.    Defendants' AAE Defenses Were Never Disclosed.**

Defendants claim that on May 20, 2017, Walker learned that Thacker had been using a company credit card for personal expenses in 2016 and 2017. (Doc. 112 at 9:11-13). GPSI also claims that he was almost terminated for using the card in 2014 but that GPSI instead required him to sign a promissory note and warned him that this can never happen again. (*Id.* at 9:13-14). GPSI also claims that it learned in June 2017 that Thacker stayed at his friends' house when traveling for work and billed it to GPSI as an Airbnb rental. (*Id.* at 10:2-3).

In addition to being false, these facts were never disclosed. (N § VI). Defendants claim to have known about the "Airbnb" issue since June 2017. (24). Yet, at no time was Thacker ever told about any Airbnb issue until August 31, 2018. (CA).   In addition, Defendants' Airbnb claim is supported by documents that have no bates stamping because there was no disclosure. (25-A, 25-B). There is also no mention of Chelsea Cassis, the one and only witness who claims to have knowledge of the false Airbnb allegation. (CA; Doc. 105). Thacker now has no opportunity for any discovery. Even if discovery was re-opened, it would result in significant delay, expense, and prejudice.

Although GPSI claims to have learned in May 2017 that Thacker used the company card for personal expenses in 2016 and 2017, Defendants have disclosed no

141296755.1

accounting of the charges they claim are personal. They, for the first time, provided such an accounting attached to their MSJ, as evidenced by the lack of any bates stamping on the accounting documents. (25-A, 25-B). There is also <u>no mention</u> of the term "after-acquired evidence until after the discovery deadline. (CA).

Pursuant to Local Rule 7.2(m)(2), Thacker requests that the Court strike Defendants' AAE defenses and the undisclosed documents and witness in support thereof based on Defendants' failure to disclose them. Defendants admit they knew about the use of the card and the Airbnb issue in May and June 2017. Yet, they inexplicably failed to disclose the documents, information, and witness in support of their AAE defenses (or even utter the words "after-acquired evidence") until after the close of discovery.

## VIII. Thacker's Alleged Wrongdoing and Subsequent Termination is a Fact Issue.

Thacker will address each of the undisclosed AAE defenses in case the Court allows Defendants to use undisclosed information and documents. As for the credit card, Thacker was given permission from W/M to use the company card for personal expenses in 2014, so long as he repaid the money. (B 35; D 194; N § VIII). Thacker signed a promissory note because management needed to document to an auditor that the card was not being used for personal expenses. (BN; J 72; N § IX ). Notably absent is any documentation showing that Thacker was ever warned not to use the card.

Defendants' claim that Thacker admitted to unauthorized use of the card because he did not object to the deduction from his final paychecks is disputed. (N § XI). Thacker could not object since Defendants never provided an accounting until their MSJ. (*Id.*). Thacker also knew that <u>some</u> personal expenses were going to be deducted. (*Id.*). Now that an accounting has been provided, he disputes some of the charges. (*Id.*).

Thacker also requested the expense reports for all GPSI employees (and later limited his request to a handful of employees) to show that other employees frequently used company cards for personal expenses and that GPSI knowingly approved those expenses. (N § XII). Thacker has personal knowledge that other GPSI employees used their card for extravagant personal expenses, including strip clubs without being

15

terminated. (H 74; N ¶ 122). Mortensen testified that another employee, Mike MacComiskey, incurred around $100,000 in expenses in 2016. (I 119). Yet, these employees were never terminated, which speaks volumes. (N ¶ 124).

GPSI did not have (and has not disclosed) any credit card use policy prior to Thacker's termination. Even if Thacker's use of the card was a violation of some unstated policy, defendants have failed to demonstrate Thacker would have been terminated. *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 361-62 (1995). Walker stated in The Meeting, "if you want to do something, we know you're getting paid, go charge something on the credit card and pay us back." (B 35). This creates a fact issue whether he would have been terminated, assuming his use was improper.

There are other reasons why it is a fact issue whether he would have been terminated for using the card. As set forth above, (i) GPSI owed Thacker money for Amerisure; (ii) Thacker was GPSI's top sales agent by a longshot for the period after his promotion in January 2016 through his termination in March 2017, generating over $2,500,000 for GPSI (BO); and (iii) that revenue will continue for years because GPSI charges its customers a fee of approximately $20/unit per month. (BQ). It is a fact issue whether he would have been terminated for these alleged offenses given his sales results.

## IX.    It is a Fact Issue Whether Thacker Mitigated his Damages.

Defendants claim Thacker is not entitled to recover any lost wages from December 5, 2017 (when he was terminated from GlobeRanger, "GR") through July 2018 (when he was hired to work for NAVEX Global) because Thacker was terminated for cause. Thacker disputes that GR was a substantially equivalent position. He explains in great detail in his declaration how the position was not substantially similar in terms of pay or opportunity for growth. (N § XV - § XVIII).

Despite having Thacker's W-2 from GR in the amount of $63,894 (S), Defendants claim that Thacker earned $158,933 from GR because he "represented to a prospective employer that he earned $232,000 total in 2017." (Doc. 112 at 12:10). They then claim that because Thacker made $73,067 in W2 wages in 2017 from GPSI (AZ), he must

16

therefore have made $158,933 in earnings from GR. Defendants know that Thacker did not earn $158,933 from GR yet presented it as such. Also, GR testified that their sales team was laid off in June 2018 after closing operations. (G 203). In contrast, GPSI received millions in private equity leading to bonuses for all employees. (D 234).

It is a fact question as to whether the position was substantially similar in terms of pay and/or or opportunity for growth. *Boehm v. Am. Broad. Co., Inc.,* 929 F.2d 482, 485 (9th Cir. 1991). As for whether he was fired for cause, GR's testimony is based entirely on hearsay and has no foundation. Even if the statements were based on personal observations, Thacker disputes that he harmed the culture, that he recorded a dinner conference, and that he refused to perform his job duties. (BX; G 196; N § XIX).

If the Court finds that the GR position was substantially similar <u>and</u> that Thacker was terminated for cause, he is still entitled to the difference between what he would have made at GPSI and what he would have made had he not been terminated from GR. His termination does not cut off his right to recover <u>any</u> wages while unemployed. Thacker would have lost the GR job in June 2018, like all GR salespersons. Thus, lost wages would resume in May 2018 even if wages were cut off in December when he was terminated.

## X. Donat Violated the FCRA.

Thacker's FCRA claim has been fully briefed in his Motion for Partial Summary Judgment and supporting Reply. Thacker stated in his Reply that he would provide additional evidence to show the Report was used for employment, credit, and insurance purposes. (See N § XXI- § XXII). Thacker alleges damages in his disclosures. (AZ 56).

## XI. Thacker Dismisses Intentional Interference with Business Expectancy Claim.

Thacker believes that Defendants interfered with his ability to find other employment and that such evidence would be contained in the documents being withheld by Defendants. He, however, does not wish to delay these proceedings any further and will reluctantly agree to dismiss this claim. (N § XXIV).

141296755.1

## XII.    Conclusion

Thacker requests that the Court deny Defendants' Motion, strike undisclosed defenses and evidence, and send this case to a prompt trial on the merits.

**Jaburg & Wilk, P.C.**


s/ Jeffrey A. Silence
Kraig J. Marton
Jeffrey A. Silence
Laura Rogal
3200 N. Central Avenue, 20th Floor
Phoenix, AZ 85012
Attorneys for Plaintiff Thacker

### *Certificate of Service*

I hereby certify that on the 15th day of November 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, and for transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Carrie M. Francis
Stefan M. Palys
Michael A. Vincent
Stinson Leonard Street, LLP
1850 North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4584
Carrie.francis@stinson.com
Stefan.palys@stinson.com
Michael.vincent@stinson.com
Attorneys for Defendants GPS Insight, LLC


Timothy B. O'Connor
Schneider & Onofry, PC
365 East Coronado Road
Phoenix, Arizona 85004
toconnor@soarizonalaw.com
Attorneys for Defendant Donat


s/Joy Brown

18

# INDEX OF EXHIBITS TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGEMENT

| EXHIBIT | DESCRIPTION |
| --- | --- |
| A. | Transcript of Recording of Meeting on March 2, 2017 ["The Meeting"] (1 of 2) |
| B. | Transcript of Recording of Meeting on March 2, 2017 ["The Meeting"] (2 of 2) |
| C. | Transcript of Recording of Meeting on March 6, 2017 (Thacker's Termination) |
| D. | Deposition of Robert Donat |
| E. | Deposition of Jason Walker |
| F. | Deposition of GPS Insight (Walker) |
| G. | Deposition of GlobeRanger (Lanaway) |
| H. | Deposition of Elliot Batcheller |
| I. | Deposition of Tyler Mortensen |
| J. | Deposition of Jeremy Thacker |
| K. | Deposition of Kristin Lisson |
| L. | Deposition of Carrie Race (Simms) |
| M. | Declaration of Kristin Lisson |
| N. | Declaration of Jeremy Thacker |
| N-1. | Airbnb Account Overview |
| N-2. | Receipt for Airbnb |
| N-3. | Email on November 11, 2016 from Thacker to Walker (and more) |
| N-4. | Map of Directions from Airbnb to LCRA HQ |
| O. | Emails on November 6, 2018 between Mr. Silence and Mr. Vincent |
| P. | Pictures from 2016 Sales Conference |

| | |
|---|---|
| Q. | Email on March 7, 2017 from Lisson to Thacker |
| R. | Audio Recording of Phone Call Between Lisson and Donat |
| S. | 2017 GlobeRanger W-2 for Thacker |
| T. | Texts on March 30, 2016 between Thacker and Mortensen |
| U. | Email on February 16, 2017 between Thacker and Mortensen |
| V. | Email on August 26, 2016 between Thacker and Walker |
| W. | Defendants' Response to Plaintiff's Discovery Requests |
| X. | Text on March 5, 2017 from Donat to Batcheller, Mortensen, and Walker |
| Y. | Deposition of GPS Insight (Holder) |
| Z. | Mobile Phone Logs for Donat |
| AA. | Texts on January 10, 2017 between Donat and Lisson (1 of 3) |
| AB. | Texts on January 10, 2017 between Donat and Lisson (2 of 3) |
| AC. | Texts on January 10, 2017 between Donat and Lisson (3 of 3) |
| AD. | Texts on March 1, 2017 between Donat and Lisson |
| AE. | Texts on February 24, 2017 between Thacker and Mortensen |
| AF. | Texts on February 16, 2017 between Thacker and Mortensen |
| AG. | Texts on February 1, 2017 between Thacker and Mortensen |
| AH. | Email on March 11, 2017 between Donat and Thacker |
| AI. | Response to Unemployment Claim of Jeremy Thacker by GPS Insight |
| AJ. | Texts on January 10, 2017 between Donat and Lisson |
| AK. | Email on March 14, 2017 between Walker, Batcheller, and Lisson |
| AL. | Email on January 14, 2016 between Thacker and Walker |
| AM. | Email on February 16, 2017 between Thacker and Mortensen |
| AN. | Texts on October 17, 2016 between Lisson and Walker |
| AO. | Draft of Text on January 17, 2017 from Lisson to Donat |

| | |
|---|---|
| AP. | Email on July 9, 2013 between Thacker and Rosenthal |
| AQ. | Email on January 13, 2016 between Walker and Mortensen |
| AR. | Texts on February 13, 2017 between Donat and Lisson |
| AS. | Texts on February 14, 2017 between Donat and Lisson (1 of 2) |
| AT. | Texts on February 14, 2017 between Donat and Lisson (2 of 2) |
| AU. | Texts on February 13, 2017 between Thacker and Lisson |
| AV. | 2017 GPS Insight W-2 for Thacker |
| AW. | Texts on December 22, 2016 between Walker and Mortensen |
| AX. | Email on February 27, 2017 from Walker to GPS Insight |
| AY. | Screenshot of Netsuite taken in February 2017 |
| AZ. | Texts on January 10, 2017 between Donat and Lisson |
| BA. | Email on August 31, 2016 between Thacker and Walker |
| BB. | Email on November 6, 2016 between Thacker and Donat |
| BC. | Email on November 28, 2016 between Thacker and Walker |
| BD. | Email on December 16, 2016 between Thacker and Donat |
| BE. | Texts on March 6, 2017 between Donat and Lisson |
| BF. | Texts on March 9, 2017 between Donat and Lisson |
| BG. | Texts on February 13, 2017 between Lisson and Walker |
| BH. | Email on August 4, 2017 between Donat and Dennis |
| BI. | Texts on March 6, 2017 between Donat and Lisson |
| BJ. | Texts on March 7, 2017 between Donat and Lisson |
| BK. | Texts on March 2, 2017 between Donat and Lisson |
| BL. | Email on August 21, 2017 between Donat and Dennis |
| BM. | Police Report on Thacker filed by Donat |
| BN. | Email on February 13, 2016 between Thacker and Mortensen |
| BO. | Chart of Units Sold for 2016-2017 |

| | |
|---|---|
| BP. | Chart of Revenue vs Income for 2016-2017 |
| BQ. | Chart of Revenue vs Income vs Expenses for Thacker |
| BR. | Slack Message on March 6, 2017 between Walker and Batcheller |
| BS. | Texts on March 7, 2017 between Donat and Lisson |
| BT. | Texts on March 6, 2017 between Donat and Lisson |
| BU. | Texts on January 12, 2017 between Donat and Lisson |
| BV. | Texts on January 24-29, 2017 between Donat and Lisson |
| BW. | Email on February 23, 2017 between Walker and Mortensen |
| BX. | Texts on March 3, 2017 between Thacker and Dennis |
| BY. | GPS Insight Sales Policy |
| BZ. | Plaintiff's 7th Supplemental Disclosures |
| CA. | Defendants' 12th Supplemental Disclosures |