Joshua W. Carden, SBN 021698
JOSHUA CARDEN LAW FIRM, P.C.
16427 North Scottsdale Road, Suite 410
Scottsdale, AZ 85254
joshua@cardenlawfirm.com
(480) 454-1100
(480) 454-1101 (Fax)
*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jeremy Thacker,<br><br>                Plaintiff,<br>v.<br><br>GPS Insight, LLC, et al.<br><br>                Defendants. | No. 2:18-cv-00063-DGC<br><br>**JOINT MEMORANDUM** |

The parties hereby provide this Joint Memorandum as ordered by the Court in the ruling upon the cross-motions for partial summary judgment (Doc. 151) (the "Ruling").

**PLAINTIFF'S POSITION:**

After reviewing the file and the many – and early - discovery-related communications between Plaintiff's former counsel and Defendants' counsel, it is rather shocking how the disclosure process was handled by Defendants in this case. As required by the Court's order (Doc. 147), Plaintiff addresses solely the limited issues caused by Defendants' and Defendants' counsel lack of MIDP compliance and will raise separately any possible discrepancies in the existing MSJ record. There are two areas directly affected by Defendants' violation: 1. The Title VII Retaliation Claim, and 2. Damages. Having read the Court's analysis of the limited factual record (i.e. no LRCiv 56.1 Separate Statement of Facts required before the transfer of this case, compared to that normally required by this division of the Court) in the Ruling, it appears that the Defendants' repeated failure to disclose items that Defendants themselves explicitly deemed relevant – did affect the outcome of the summary judgment rulings. And for trial, the sales policy – the very policy under which Plaintiff's compensation would have been calculated for purposes of damages

1



during the relative time has simply "disappeared" without a trace. In footnote nine, the Court notes that Plaintiff relied "on the MIDP's disclosure requirements alone" rather than conducting discovery. Ruling at 16 n. 9. While the undersigned agrees the MIDP program was never designed to function as a substitute for ordinary discovery (and, besides repeated meet and confers on the MIDP issues, and several subpoenas duces tecum, Plaintiff's previous counsel did not serve "ordinary" discovery requests in this case), Plaintiff's previous counsel's reliance on the MIDP in this case was not devoid of context. On January 19, 2018, Defendants' counsel sent Plaintiff's first counsel a letter stating, *inter alia*,

> Per General Order 17-08, parties are required to disclose all documents that they believe may be relevant to any party's claims or defenses. This letter is notice that Defendants believe the following information is relevant to the claims and defenses in this case, and **we ask that you include it in your initial production so as to avoid unnecessary requests for production later**:
> ….
> • **Any** electronic information stored on devices within your control or possession relating to Kristin Lisson or Robert Donat, including **text messages**, e-mails, notes, photographs, audio or video recordings, etc.
> • **Any** paper documents relating to Mr. Donat or Ms. Lisson, including notes, photos, mementos, love letters, cards, receipts, etc.
> • **Any** backup copies stored in iCloud or another cloud backup service of the data formerly stored on your cell phone or personal computer, to the extent relevant to this case.
> • **All text or multimedia messages, Instagram posts, Facebook posts, Snapchat posts, emails, or any other data stored on your phones, computers, or social media accounts that contains information related in any way to this case, including communications between you and any employee, officer, or manager of GPS Insight, LLC.**

On February 6, 2018, Plaintiff's counsel sent his own commensurate list of categories, which also explicitly included text messages between Donat and Lisson. On May 28, 2018, Defendants' counsel sent another letter reiterating categories of documents that they believed to be relevant under the MIDP – including "all" (i.e. not just subjectively perceived "relevant") communications regarding Donat and GPSI. Defendant made it clear that they viewed compliance with those specific requests as "required" under the MIDP. Yet, as Mr. Palys admitted to the Court during the hearing on June 20, 2019, Defendants' counsel has withheld documents <u>in those exact</u>

2

categories claiming that they did not believe them "relevant." Plaintiff's prior counsel conferred with Defendant's counsel on multiple occasions regarding the deficiencies (far earlier than what was represented to the Court on June 20, 2019) and filed multiple discovery disputes. Yet, the text messages remain withheld. And this is Defendant's behavior regarding <u>just one</u> of the discovery issues.

**I.      Unproduced Relevant Text Messages**

A key factor in the court's MSJ ruling on Plaintiff's Title VII Retaliation claim was a finding that Kristin Lisson did not engage in protected activity prior to Thacker's termination. Doc. 151 at 9-10. Some of the deleted text messages between Lisson and Donat that Defendants have now openly admitted to withholding (based on Defendant's numbering system, the number of withheld texts appears to total approximately **1,800** during the relevant time period) are quite likely to be highly relevant to this exact issue as they occur between **<u>January and February 2017</u>**. Defendant previously got away with claiming that this issue was "moot" saying that Ms. Lisson had produced "all" of the text message she had between her and Mr. Donat when Defendant subpoenaed same from Lisson on March 1, 2018. However, Defendant conveniently omitted that Ms. Lisson testified that she had deleted a number of highly-charged texts between her and Donat <u>prior</u> to Thacker's termination with statements from Donat such as "I want you to be my queen" and Ms. Lisson rejecting his advances to his ever-increasing anger at Lisson <u>and Thacker</u>. Plaintiff later sent several subpoenas duces tecum to several individuals associated with GPSI. On **July 30, 2018**, Defendant's counsel Stefan Palys sent an email stating:

"Jeff [Silence] – on our call just now we agreed that we don't need to respond to any document requests in the subpoenas to Tyler Mortensen, Carrie Race, Robert Donat, Elliot Batcheller, or Jason Walker, <u>since we have images of Mortensen, Batcheller, **Donat**, and Walker's phones</u>, as well as access to their emails. Can you confirm so we don't need to prepare an objection? It'd otherwise be due today." Defendant claims possession of a <u>massive</u> amount of data by virtue of this single email, yet Defendant has simply withheld the missing messages between Lisson and Donat (along with a great deal of other information that Defendant dangled but never produced). Defendant has justified this action by the bald assertion that <u>none</u> of the withheld

3

messages (including Donat continuing to pursue Ms. Lisson and her rejection of him) are "relevant."

**II.    Spoiled Sales Policy**

The sales policy was referenced at Defendant GPSI's 30(b)(6) deposition of Jason Walker on May 15, 2018 who readily agreed that he had "copies" of the policies going back to 2014 on "Knowledge Base" at GPSI, including the then "current" sales policy. Yet, by September 15, 2018 at his own deposition, Mr. Walker not only claimed that he lacked the current policy, **but admitted that it had been changed as of June 6, 2018 after his original deposition.** Defendant's counsel claimed in disclosure that "all available versions" have been produced. This is spoliation at its finest as Plaintiff is left without any ability to demonstrate from Defendants' policies what his sales compensation would have been under the actual policy as compared to the substantial changes in the policy because, in Walker's words "the organization changed and grew, and we changed the levels because we wanted to provide a better career path for our salespeople to get promoted."

**III.    Spreadsheets on commissions**

The spreadsheets are a related issue to the Sales Policy in that they affect Plaintiff's ability to prove damages. The company kept a "master" spreadsheet for all sales people for their commissions and a second spreadsheet deciding "profit sharing." When sending the monthly commission report to each salesperson during Plaintiff's employment, all underlying data was sent. However, in production GPSI removed data from the commission spreadsheet for most of the sales people and removed <u>all</u> of the underlying data, making a true comparison and analysis of comparable performance impossible. Furthermore, GPSI removed all underlying data from the profit sharing spreadsheet. This makes it impossible to determine those calculations from GPSI, which had to do <u>more</u> work to withhold this data, than if they had simply produced the <u>single</u> spreadsheet as kept in the ordinary course of business. Plaintiff has requested this information since the original MIDP discussion and it has never been produced.

**IV.    Near-Fully-Redacted Tax Returns**

In a degree of compliance with the Court's June 20th order, Defendant's counsel has fully-



4

redacted every financial line except "net income" from the single produced page of a Form 1120S for "Sedonatech, Inc." tax years 2016 and 2017. Given the protective order that has been in place since February 2018 in this matter (Doc. 16), this redaction is excessive.

**V.     Subpoena**

Plaintiff does not concede to the release of any privately-posted information online, but does not object to the Defendants seeking information via subpoena if the Court is inclined to allow additional discovery. Of course, if the Court is so inclined to further extend the time for discovery in this matter, Plaintiff respectfully requests the opportunity to revisit a few of the discovery issues that Defendant has failed to comply with along the way.

**Conclusion:**

Plaintiff contends that such MIDP failures by Defendants have tainted the overall discovery and MSJ process to a degree where justice has not been served – the documents and records that would have allowed Plaintiff to prove his claims have been successfully (and intentionally) withheld by Defendants. If the MIDP pilot program is going to have a chance of success in <u>preventing</u> such disclosure abuses, then the Defendants must be held to account for failing to comply. If, after the Court orders production of the withheld records, it is found that Defendant has indeed withheld relevant evidence, Plaintiff seeks 1. an opportunity to revisit the full scope of precisely how much relevant evidence was withheld or spoiled; 2. an order of sanctions for the withholding and the spoliation of evidence, including an interim award of fees and the possible reversal of the Court's summary judgment order. Plaintiff will also be separately filing a motion to reconsider portions of the summary judgment ruling.

. . .

. . .

CORE/3505308.0002/154437271.4

**DEFENDANTS' POSITION:**

Plaintiff's position goes beyond the limited scope of the Court's order (Doc. 151 at 23 ¶ 4 (citing Doc. 147)). Plaintiff instead complains about Judge Humetewa's summary judgment briefing procedures;[1] and asks to reopen discovery generally to conduct discovery about discovery (what was supposedly withheld or lost) and for an unspecified award of sanctions – precisely what this Court told him not to do again. *Compare supra* 5: 16-19 *with* Doc. 134 at 3 ("It has become clear to the Court that Plaintiff is attempting to use the rules of the MIDP to expand its intended purpose and to reopen and expand the scope of discovery. The Court will not allow this to happen going forward.") and *id.* at 8 ("the parties cannot abuse the procedures of the Court by continuing to file discovery disputes to attempt to further conduct discovery in this matter."). As detailed below, the issues Plaintiff raises are: (1) not relevant to any issue at trial; and (2) a *sub rosa* motion to reconsider the Court's prior order (Doc. 134). As Judge Humetewa concluded: "[d]iscovery has ended, and the case must move on." (Doc. 134 at 8). Plaintiff's dissatisfaction with his prior two counsels' conduct of discovery, no matter how nefariously spun,[2] is not grounds to reopen discovery.

**I. Text Messages Between Donat and Lisson.**

Plaintiff seeks text messages between Donat and Lisson for the period from January 10, 2017 to February 9, 2017. This is a request to reconsider Judge Humetewa's ruling (Doc. 134). In the briefing preceding Judge Humetewa's ruling, Plaintiff raised the identical issue he does

---

[1] *See supra* 1:23-26. Plaintiff never complained about that procedure previously, nor did he seek an alternative procedure like an extension to the page limitation. Instead, he submitted hundreds of pages of exhibits, as he was free to do. This is what he now calls the "limited factual record."

[2] Plaintiff claims "it is rather shocking how the disclosure process was handled by Defendants in this case." *Supra* at 1. In fact, with Plaintiff's original counsel, it was cooperative. Defendants actually processed *Plaintiff's* ESI as a favor to his original counsel, who lacked the resources to do so. Plaintiff is correct that each side exchanged letters about what material they believed was relevant. But neither side agreed the others' list was correct, nor did they produce all of what was on each others' list. Defendants therefore followed up with requests for production and subpoenas. As Plaintiff concedes above, his predecessor's use of the MIDP was not correct, and he opted not to send any discovery of his own. *Supra* 2:3-6. Those choices are not discovery misconduct by Defendants.

6

here: he claimed that there must be relevant texts between Donat and Lisson that Defendants should produce under the MIDP, though he never explained what the relevance was. (Doc. 96, p. 4, ¶ 15) Judge Humetewa noted Defendants' position "that they have produced all relevant messages" and that others were produced by Lisson via a subpoena, such that "[t]his request is cumulative . . . ." (Doc. 134 at § J).

If Plaintiff disagreed with this ruling, or believed that Judge Humetewa had misapprehended his position (as he apparently does (*supra* 3:12-16)) he was free to file a motion to reconsider "no later than fourteen (14) days after the date of the filing of the Order that is the subject of the motion." LRCiv 7.2(g)(2). In that motion, he had to "point out with specificity the matters that the movant believes were overlooked or misapprehended by the Court, [and] any new matters being brought to the Court's attention for the first time and the reasons they were not presented earlier . . . ." LRCiv 7.2(g)(1). Judge Humetewa's order was filed on December 20, 2018. Plaintiff never filed a motion to reconsider. Instead, he contacted the Court by phone in June 2019. For this reason alone, the Court should reject Plaintiff's attempt to obtain untimely reconsideration of Judge Humetewa's ruling.

In any event, Defendants correctly determined that the messages were not relevant. Defendants previously explained that they used a combination of search terms and document-by-document review to find and produce relevant material without burying it under irrelevant material. (Doc. 104 at 2) Defendants determined the texts here were not relevant: no one disputes that Donat and Lisson had a romantic relationship. Plaintiff now speculates that these messages could "quite likely" be relevant – not to an issue to be tried – but to the Title VII retaliation claim the Court just granted summary judgment on. *Supra* 3:6-17. Specifically, Plaintiff speculates that there might be a text in which Lisson engages in protected activity prior to Plaintiff's termination. *Id*.

There is not, as the Court just noted in its ruling. In its summary judgment ruling, the Court notes Lisson's sworn deposition testimony that she made her first complaint **on March 9, 2017**. (Doc. 151 at 9-10 (also noting her declaration that does not describe complaints before March 9)) If she believed there were a text relevant to engaging in protected activity – the sole reason

7

Plaintiff claims the texts are relevant – she could have testified so.[3] She never has.[4]

Finally, Plaintiff references an email exchange between defense counsel and Plaintiff's predecessor counsel about objections to subpoenas. This email exchange is irrelevant. Plaintiff served subpoenas on several GPS Insight, LLC ("GPSI") employees, as well as defendant Rob Donat. (*E.g.,* Docs. 57-61) Defendants' counsel explained that those subpoenaed were GPSI employees/a party, and that the material sought was actually in the possession, custody, or control of GSPI and would need to be obtained through a request for production, or else were already subsumed in Plaintiff's disputes about the MIDP. The email had nothing to do with whether additional material would be produced.

**II.  "Spoliated" Sales Policy.**

This too is a motion to reconsider. Plaintiff previously raised issues concerning what policies had been produced. Defendants explained that they had already produced all policies that exist. The Court ordered production of all policies, to the extent they had not already been produced. (Doc. 134 at § C) As they had been, there was nothing more to do. (Doc. 96 at ¶ 4 (noting receipt of sales policies)) It does not appear that there is anything different about the current request.

Though even easier: there is no spoliation or relevant evidence at issue. Plaintiff misapprehends what constitutes spoliation. He appears to believe that if material is altered or lost, even prior to when litigation is anticipated, that this is spoliation. It simply is not. *See* Fed. R. Civ. P. 37(e) (rule applies where information "should have been preserved in anticipation or conduct of litigation"); *e.g., Rambus, Inc. v. Infineon Techs. AG*, 220 F.R.D. 264, 286 (E.D. Va.

---

[3] Again, if Plaintiff disagreed with Defendants' conclusion, he was free to serve requests for production. As counsel notes above, he did not timely do so, nor were those untimely served within the numeric limit imposed by this Court's scheduling order. Plaintiff never raised Defendant's objections to those untimely, excessive requests to this Court.

[4] Plaintiff also references Donat's supposed "ever increasing anger." Plaintiff does not identify any element of a claim, however, that this is relevant to. *See* Doc. 151 at 4-5 ("[P]ersonal animosity is not the equivalent of sex discrimination and Plaintiff cannot turn a personal feud into a sex discrimination case." (quotation omitted)). Moreover, the window at issue is January 10, 2017 to February 9, 2017. If the issue is "ever-increasing anger," Lisson has already produced the texts in the month prior to and approaching the termination date of March 6, 2017.

CORE/3505308.0002/154437271.4

2004) ("the vital question at issue [is]: whether Rambus intentionally destroyed documents notwithstanding that it anticipated litigation."). Here, GPSI maintained its sales policies on a shared drive. In the course of its operations, it updated the policies from time to time. GPSI did not necessarily preserve the old policies because it was updating an electronic copy. It has searched for what policies exist, and produced them. As the Court directed at the prior hearing on this issue (Doc. 147), Defendants produced a verified disclosure statement stating that all such policies had been produced. Plaintiff does not contend that Defendants should have anticipated litigation when these policies were updated, nor has he identified any relevant information that was lost.

Plaintiff contends otherwise, arguing that GPSI employee Jason Walker admitted that the policy had been changed as of June 6, 2018, after his original deposition. Defendants have produced that policy. The change is this: at the time Plaintiff was employed, terminated employees were paid out their commission for a period of time. After Plaintiff's termination, GPSI changed the policy so that terminated employees would *not* be paid commission following their termination in the same way Plaintiff was. Here, however, GPSI paid Plaintiff out under the old policy, and has conceded that it is the old policy that would govern and it has paid out his commission under that policy.[5] Consequently, there is no "lost" information and no spoliation.

### III. Spreadsheets on Commissions.

Plaintiff presently complains about who and what were included in a commission worksheet. Plaintiff made the same complaint previously. (Doc. 96 at ¶¶ 1-3) Then he wanted *all* data about *every* employee, whether or not comparable to him, for an extended period of time. (*Id.*) Defendants explained that they provided information on the two salespeople Plaintiff eventually identified as comparable, and two others Defendants believed were comparable, limited to the time relevant to this case. (Doc. 104 at ¶¶ 1-3) Defendants further explained the limited information that had been removed, and that Donat had testified how to calculate the single

---

[5] Indeed, Plaintiff never claimed he was unable to calculate his commissions for his damages claim.

9

omitted formula.[6] (*Id.*) Judge Humetewa found Plaintiff's request to be over-broad and irrelevant, and that Defendants' approach was reasonable. (Doc. 134 at §§ A-B) The Court therefore denied Plaintiff's requests. Again, Plaintiff never filed a motion to reconsider, yet asks this Court to revisit Judge Humetewa's prior ruling. Plaintiff's motion is not only timely under LRCiv 7.2(g), but Plaintiff additionally fails to explain how Judge Humetewa overlooked or misapprehended his position. LRCiv 7.2(g)(1).

The information Plaintiff seeks (again) was never relevant. Plaintiff does not provide any explanation to the contrary.

**IV. Redacted Tax Returns**

As ordered, Defendants produced corporate and personal tax returns. Since punitive damages are based on income, Defendants redacted all lines other than net income. Plaintiff now complains that he should get unredacted returns. He should not.

The reason Plaintiff gave Defendants' counsel for wanting unredacted returns was to see if Defendants took excessive deductions. (In his brief, Plaintiff provides no explanation at all why this information is relevant.) But tax returns are filed under penalty of perjury, and discovery has closed. Consequently, it is too late for him to conduct further discovery on the propriety of any deductions, and any information he did gather (there is none to be had) would not be admissible.

Defendants are particularly concerned about producing such information given Plaintiff's history of using litigation materials outside of Court in an effort to harass and harm Defendants. Thus far, Plaintiff has: (1) created YouTube videos outlining his allegations;[7] (2) created a website laying out his case, using litigation materials, which he then sent anonymously to GPSI employees; (3) reached out to GPSI customers raising claims of discrimination and threatening them in an effort to interfere with GPSI contracts; and (4) posting anonymous negative reviews

---

[6] Defendants did not want Plaintiff to have information about GPSI's total profits, as he has misused information from this litigation, as detailed below. A portion of that data is subject to a Non-Disclosure Agreement. In any event, Plaintiff can see from the raw numbers whether he was supposedly treated differently than other similarly-situated employees. Plaintiff has never claimed that he needs the formulas/underlying data to calculate his damage claim, so the raw numbers should suffice.

[7] https://www.youtube.com/channel/UCCqWFZI0twMLhOgRsQkIvEA

10

CORE/3505308.0002/154437271.4

on a popular job posting website (Glassdoor) in an effort to disparage GPSI and drive away potential employees.[8] Plaintiff has never denied that he is behind each of these actions. Indeed, he narrates some of the YouTube videos. To the contrary, when it comes to the subpoena to Glassdoor (addressed next), Plaintiff instead objects to the "release of any privately-posted information online . . . ."

The last thing the Court should do is put unredacted tax forms in his hands to be used outside of Court. If the Court requires production at all (and it should not because the information is irrelevant) it should direct that the returns be produced for attorneys' eyes only.

### V. Subpoena to Glassdoor

After discovery closed, Plaintiff posted anonymous negative reviews on the job-posting website Glassdoor. Defendants sought to subpoena that information. (Doc. 145) Plaintiff does not deny that he is the anonymous poster, and he does not oppose Defendants' request to subpoena Glassdoor. The Court should therefore allow it.

What Plaintiff instead does is ask for a *quid pro quo*: if Defendants are allowed this additional, limited discovery, Plaintiff contends the floodgates should be opened for him. They should not – the situations are different. Defendants are seeking a single subpoena to obtain information first available after the close of discovery. Plaintiff is seeking to re-do discovery because he is unhappy with his prior counsel. Permitting Defendants' discovery poses no reason why Plaintiff's should be allowed, and Plaintiff develops no argument to the contrary.

### Conclusion

Plaintiff has never been happy with his counsels' conduct of discovery in this case. He has submitted innumerable filings containing unspecified sanctions requests and requests to re-open discovery. He does it in the current joint filing, even though it is beyond the scope of the Court's order calling for this brief, and though Judge Humetewa expressly told him not to. As she deduced, Plaintiff's various discovery issues are nothing but a ruse to try to re-do discovery. But she resolved the issues and directed that the case move on. The Court should not revisit that

---

[8] *E.g.,* https://www.glassdoor.com/Reviews/Employee-Review-GPS-Insight-RVW26248597.htm

11

determination.

Respectfully submitted this 28th day of August, 2019,

JOSHUA CARDEN LAW FIRM, P.C.


By: s/Joshua W. Carden *(with permission)*
Joshua W. Carden
*Attorneys for Plaintiff*
*Jeremy Thacker*

**STINSON LLP**

By: */s/ Stefan M. Palys*
Carrie M. Francis
Stefan M. Palys
Michael Vincent
1850 North Central Avenue
Suite 2100
Phoenix, Arizona 85004-4584
Attorneys for Defendants

**SCHNEIDER & ONOFRY, PC**

By: /s/ *Timothy B. O'Connor*
Timothy B. O'Connor
365 East Coronado Road
Phoenix, Arizona 85004
Attorneys for Defendant Donat



12

CORE/3505308.0002/154437271.4