Carrie M. Francis (020453)
Stefan M. Palys (024752)
Michael Vincent (029864)
**STINSON LLP**
1850 North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4584
Tel: (602) 279-1600
Fax: (602) 240-6925
Email:  carrie.francis@stinson.com
        stefan.palys@stinson.com
        michael.vincent@stinson.com

Attorneys for Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Jeremy Thacker,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>GPS Insight, LLC; Robert J. Donat, Individually and as Trustee of The Robert Donat Living Trust Dated April 19, 2017,<br><br>　　　　　　Defendants. | No. 2:18-cv-00063-PHX-DGC<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION *IN LIMINE* NO. 5 – THACKER FAMILY HISTORY / CHILD SUPPORT** |

Plaintiff challenges Exhibit 211 (**Exhibit A**) and discussion of its contents. The exhibit, and evidence relating to it, are relevant to Plaintiff's reputation and to his defamation damages. As background, in 2014 Plaintiff told GPSI his child support obligations put him in a financial bind. Ex. A, at GPSI_00083900.  Plaintiff hoped to get the support reduced, but believed his sales commissions would inflate his pay to the point he would not be eligible for relief. *Id.*  Plaintiff then suggested "asking [a co-worker] if he would be willing to get paid my commissions and just give [Plaintiff] the cash after the fact." *Id.*  In other words, Plaintiff wanted GPSI to help him mislead the Court so he could save "$12,000 to $20,000 per year for the next 2.5 years." *Id.*  GPSI declined.

In this case, Plaintiff paints himself as a victim who was terminated because Rob Donat was supposedly jealous of him, and wants the jury to believe that he has suffered emotional distress from his termination and the statements allegedly made about him.

Defendants' theory is that Plaintiff was attempting to orchestrate his firing at time when he already knew he would leave the company, in the hopes of being able to file this lawsuit. That Plaintiff was previously willing to provide false information to a Court bears on Plaintiff's then existing character and reputation.[1] *Schafer v. Time, Inc.*, 142 F.3d 1361, 1371-72 (11th Cir. 1998) ("a charge of defamation or libel commonly makes damage to the victim's reputation or character an essential element of the case."); Fed. R. Evid. 405. Defamation damages are meant to compensate for the delta between Plaintiff's character before and after the defamatory statement. *See Roper v. Mabry*, 551 P.2d 1381, 1385 (Wash. Ct. App. 1976) ("As a general rule, in a defamation action, the defendant may offer evidence that a plaintiff's reputation is already bad, in spite of the alleged defamation, in order to mitigate damages."); *Walkon Carpet Corp. v. Klapprodt*, 231 N.W.2d 370, 374 (S.D. 1975) (when damage to reputation is part of a plaintiff's claim, "evidence of his reputation or past misdeeds [is] admissible both in establishing truth and in mitigating damages" (citation omitted)); *Finklea v. Jacksonville Daily Progress*, 742 S.W.2d 512, 517 (Tex. App. 1987) ("It has long been the rule in Texas that the plaintiff's tarnished reputation may be shown in mitigation of damages."). Here, then, Plaintiff's poor character before the alleged defamatory statements bear on just how much harm has been done by the alleged statements, and so tend to prove he has suffered less damage. *See Schafer*, 142 F.3d at 1372 (noting the jury was permitted "to consider plaintiff's bad

---

[1] The supposedly contrary cases Plaintiff cites are irrelevant and not on point as there is no connection between the child support obligation and a matter that was at issue. *Rogers v. S. Star Logistics, Inc.*, 2015 WL 3450643, 2 (M.D. Ala. 2015) (Court granted unopposed motion *in limine* in a car accident case finding child support arrearages as being irrelevant to whether the plaintiff was contributorily negligent or to his damages); *Nibbs v. Goulart*, 822 F. Supp. 2d 339, 346 (S.D.N.Y. 2011) (§ 1983 case, unpaid child support obligations could not have created a motive to bring suit because the obligations arose after the suit was filed); *Montgomery v. NLR Co.*, 2007 WL 3171961, 2 (D. Vt. 2007) (personal injury suit filed in the 2000s; unpaid child support in the 1960s and 1970s not relevant to claims for damages for familial association, and unduly prejudicial); *U.S. v. Newell*, 584 F. Supp. 2d 272, 274-75 (D. Me. 2008) (preliminarily ruling that unpaid child support obligations not relevant, where government does not indicate it intends to elicit the evidence; but reserving the right to revisit the ruling if a proffer is made before presenting it at trial). Here, by contrast, the support *is* relevant to existing reputation, credibility and damages.

1 reputation in mitigation of damages"). In fact, *Schafer* affirmed the district court's admission of evidence of the defamation-plaintiff's unpaid child support obligations for just this reason. *Id*. at 1371-72. Here, a jury could conclude Plaintiff's reputation prior to the alleged defamatory statements was less-than-pristine because people know of his willingness to mislead a Court.

Exhibit 211 is also relevant to whether Plaintiff can prove that his contract would have continued for purposes of his tortious interference claim and his defamation claim. As argued in response to his 1st and 2nd motions *in limine*, Donat's position is that Plaintiff would have been terminated shortly after he actually was due to his misuse of a company credit card. Plaintiff's theory regarding misuse of the credit card is that GPSI gave him permission to use it in 2014 for personal expenses precisely because of the strain from the child support obligations. *See* Plaintiff's Deposition at 67-68 ("Q: How did it come about that you were given permission to use the card to charge personal expenses? A: I was – my paychecks were coming it at something around $400 per – every other week due to child support being deducted, and I didn't know how to survive and pay my rent at the time. So I went to them and asked . . . [a]nd their response to that was to use the credit card for all my personal expenses."). This discussion is missing from the connected email Exhibit 211, which tends to prove Defendants' version of the facts, i.e., that this discussion did not happen at all. Plaintiff believes that he always had this permission, which is why Donat's alleged statements about his stealing, prosecution, and illegal purchases are supposedly false. So the jury will have to wade in to the child support evidence to resolve these issues as well.

Plaintiff's motion should be denied because evidence relating to child support is relevant to all of the issues above. Given the high degree of relevance to reputation, credibility, damages, and elements of Plaintiff's claims, the evidence is not unfairly prejudicial and should be presented to the jury.

3

1      RESPECTFULLY SUBMITTED this 5th day of December, 2019.

**STINSON LLP**

By:  /s/ Stefan M. Palys
     Carrie M. Francis
     Stefan M. Palys
     Michael Vincent
     1850 North Central Avenue, Suite 2100
     Phoenix, Arizona 85004-4584

**SCHNEIDER & ONOFRY, PC**

By:  /s/ Timothy B. O'Connor [with permission]
     Timothy B. O'Connor
     365 East Coronado Road
     Phoenix, Arizona  85004

     Attorneys for Defendants

4

# CERTIFICATE OF SERVICE

I hereby certify that on December 5, 2019, I caused the foregoing document to be filed electronically with the Clerk of Court through ECF; and that ECF will send an e-notice of the electronic filing to:

Joshua W. Carden
JOSHUA CARDEN LAW FIRM, P.C.
16427 North Scottsdale Road, Suite 410
Scottsdale, AZ 85254
joshua@cardenlawfirm.com
*Attorney for Plaintiff*

Timothy B. O'Connor, Esq.
SCHNEIDER & ONOFRY, P.C.
365 East Coronado Road
Phoenix, Arizona 85004
toconnor@soarizonalaw.com
*Attorneys for Defendant Robert Donat*

I hereby certify that on December 5, 2019, a courtesy copy will be e-mailed to:

Judge David G. Campbell
United States District Court
Sandra Day O'Connor U.S. Courthouse, Suite 623
401 West Washington Street, SPC 58
Phoenix, Arizona 85003-2161

/s/ Linda Holder

CORE/3505308.0002/156346331.1

# Exhibit A

| | |
|---|---|
| **From:** | Jeremy Thacker [/O=MEX05/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=JEREMY.THACKERC0B] |
| **Sent:** | 10/28/2014 4:21:50 PM |
| **To:** | jeremy@thackerfamily.com |
| **Subject:** | FW: Overwhelmed |

Sent from my Android phone using TouchDown (www.nitrodesk.com)

-----Original Message-----
**From:** Jason Walker [jason.walker@gpsinsight.com]
**Received:** Tuesday, 28 Oct 2014, 9:12AM
**To:** Jeremy Thacker [jeremy.thacker@gpsinsight.com]
**CC:** Tyler Mortensen [tyler.mortensen@gpsinsight.com]
**Subject:** RE: Overwhelmed

Jeremy,
Thanks for the clarification. I certainly understand the child support fiasco as I have dealt with similar issues in the past (although not as severe) and it is very frustrating. I have been trying to figure out a way to help you get this resolved. (Don't have any answers yet, but I am working on it) Tyler and I are committed to helping you figure this out if at all possible. I made some additional comments in line below...

**From:** Jeremy Thacker
**Sent:** Monday, October 27, 2014 6:56 PM
**To:** Jason Walker
**Cc:** Tyler Mortensen
**Subject:** Overwhelmed

Jason,

Overwhelmed. It is about the only word that I can come up with that summarizes my thoughts on my personal situation with my family and past. Beginning to explain the situation is a daunting and overwhelming task as well. Overwhelmed is not always a bad thing though. I'd like to begin by saying how overwhelmed with gratitude I am for the way that I've been treated by GPS Insight. To do something shitty that puts people in a bad situation and then to be treated with kindness and concern from those same people is overwhelming. I am extraordinarily grateful.

While I could go on and on for the things and people i'm appreciative for, I don't want to overwhelm you with the length of this email. I'll try to make a long and complicated situation as short as possible.

4 years ago, my parents took custody of my children from my ex-wife and I. While I have no secrets and don't mind telling that story, I'll stick to the matter at hand and let you ask if you'd like more details. Up until November of last year, I paid $500 per month in child support to my parents and my ex-wife paid a couple of hundred. In November, my parents filed for a modification based on current incomes of my ex and I. Neither of us attended the hearing for multiple reasons. First, neither of us could afford an attorney. Second, child support is, typically, based on a percentage of income and is a pretty standard procedure. I was anticipating my child support going up by $200 per month based on my research and everything I read about it. The ruling came back that my child support was going up to $1,650 per month and my ex's was going to $600 per month. To say I was shocked is an understatement. The income that they used to come up with this judgement was based on my salary plus the draw that I was receiving at the time. I was expecting that. What I wasn't expecting is that they concluded that since together my ex and I made over six figures that if we lived together in Monroe that we could afford private school, orthodontics, and extra-curricular activities. Based on that, the court ruled that I would need to pay an additional $1,000 per month on top of the normal child support.

In June, my draw ended and my income dropped considerably. My net paychecks were in the $600-800 range twice per month. I saw this as my opportunity to get my child support reduced to the fair amount that it should have been all along. By no means am I trying to skip out on what I should be paying for child support. I just don't want to pay the extra $1,000 per month that was only added on because I couldn't afford an attorney and because my family is friends with the court officer that made the decision. In June, I started contacting lawyers in the area about my case...which is more difficult than it may seem when I'm a thousand miles away and my family is prominent in the area. After a couple of weeks of dealing with an attorney from Shreveport (an hour and a half from Monroe where my case is), she referred me to another attorney that was closer to the court. In July, I hired Ashley Page as my attorney. She told me that the modification should be very simple and quick. On July 22nd, she told me that she didn't expect it to take more than 30 days. I

paid her $1,500 in July and am expected to pay another $1,500 once it goes to court. She, also, told me that my modified payment would be from the date that she filed the papers not the actual court date. So since she filed in July, even if the court date was in September, the change would date back to July. *[Jason Walker]* Loray had mentioned to me that there was a possibility that if you called the state bar of LA you may be able to get a new attorney on a pro bono basis. Apparently, lawyers do this to make themselves feel like they are giving back??? Have you tried to look into this at all?

At the time my draw was ending, I happened to start closing some deals including Pasadena. This put me in a bit of a catch 22. If I showed income for the deals that I was closing, I would not be able to get a modification because Louisiana requires a 20 or 30% reduction in income to apply for a modification. At this time, I went to Tyler and told him about the situation. He told me that I could put personal expenses on the company card and we would reconcile on the back-end. At that time, I had no idea things would drag out like they have. Based on the expectations set by my attorney, I thought things would be done by the end of August or early September. I would have a $2-3k credit for child support for August and a portion of September, the $10,000 or so in commissions for Pasadena and other deals, and my income would go up $1,000 per month because of the child support reduction going forward. Well that didn't happen. After 45 days, I would email my attorney updated paychecks and documentation regarding my income. She didn't respond to those emails but I hadn't asked any questions either. At 60 days, I started getting worried and asking questions via email. After a week of no responses, I tried calling her and only got VM. BTW, she doesn't own a firm or have employees. Finally, I text her and she responded. The response was something along the line of "I've been busy and I'll respond to you soon". After 2 weeks of these kinds of text, I sent her a more direct email demanding communication and gave her a deadline to respond. At 5 PM on the afternoon of that deadline, she responded to my questions. She said that the original request for a court date had been rejected and she didn't elaborate on why but reading between the lines it seemed that she had filed the wrong dates or not followed the correct procedure. She said that it could be up to another 60 days from that date (2.5 weeks ago now). When I asked if the support would still be modified from the original date, she said that she didn't know and it would be the courts decision. Since then, I have reached out on multiple occasions but haven't heard anything from her. I have no evidence of whether she has ever filed anything. *[Jason Walker]* Per my comment above, it may be good to get someone local to reach out to her and put a fire under her ass. I do have another idea that I will come down and talk to you about.

I am clearly stuck between a rock and a hard place. On one hand, I can't live off of $1,200-1,400 per month. It doesn't matter how I budget or what steps I take, I can't figure out a way to live off of that amount. *[Jason Walker]* I get it... On the other hand, if I get paid the commissions and income that I have due to me then I won't be able to get my child support modified and that will cost me between $12,000 and $20,000 per year for the next 2.5 years. If I take the income now, it would temporarily help me out from a cash flow perspective but it could very well put me in a worse hole down the road if I had a couple of months where commissions didn't happen or were delayed. Clearly the best scenario is for me to get the child support modified as soon as possible. The best way to do that would be to hire a new attorney that can move on this quickly. Unfortunately, I can't afford to do that either. Plus, if I hire a new attorney, I can only assume that I would forfeit the money I've paid this attorney plus the $3,000 in child support reductions I was expecting. I could always sue my current attorney but that seems like the last thing on earth I want to get involved with. *[Jason Walker]* Not a good idea...

So my question is how do I survive between now and the court modification without showing income that would make the whole thing null and void. I am open to any and all suggestions. Like I've told Tyler, I don't expect any help from the company. It's not anyone's problem but my own and I put myself in this position. I was really hoping that when I had to answer for my use of the credit card that I would be able to say "I'm sorry. That was a horrible situation and it's over with and you don't have to worry about because that situation won't happen again." Unfortunately, I don't know when this modification is going to take place and I don't know how to get a concrete answer on that. I am still, currently, in the position of getting $700 paychecks that are barely enough to cover my rent and electricity. So while I am very sorry for the hassle I've caused everyone, I am still in this position of desperation. One possible solution that I've thought of is asking Lance if he would be willing to get paid my commissions and just give me the cash after the fact. I don't think that would put the company in the position of breaking any rules and it would just be up to Lance and I to do the accounting on the backside. I have not brought this up to Lance and, frankly, am not even sure I want to put him in that position. *[Jason Walker]* This is probably not the best idea. I may want to discuss this with Rob to see if I can get him to help in some way. No promises, but I think if I lay this out he will be fairly sympathetic/empathetic to your situation.

This afternoon, Wayne asked me if I wanted to get paid on Pasadena on the 5th. I told him 'yes and no'. I would like to talk with you about this and any ideas that you may have. If the answer is that I need to get paid and just deal with the consequences of the child support, I'll do that. I'm very tired of putting stress on people around me and I'm so ready for all of this to end. With that said, I do not know if I can go through this hell again. If I don't get the child support modified, I will not have any room for error in my financial life for sometime to come. Even if I'm as successful as I'm expecting to be at GPS Insight, any delay in pay, emergency, repair, or unexpected expense could destroy me. If I can get the support modified, I can live comfortably off of my base alone and save a tremendous amount of money when I'm getting commission checks on top of that. *[Jason Walker]* We are committed to helping you make at least $200k next year.

When I came into the office on Friday and saw you in Tyler's office, I was prepared for the fact that I might be fired. The last thing I expected was for you to have your wife help me with my legal issues. It is hard to explain how I felt at that moment. I feel very fortunate to work at GPS Insight and surrounded by people like you and Tyler who look at me as more than just a cog or number. Thanks for your help and I promise that I intend to make your belief and support in me proven worthwhile. *[Jason Walker]* No worries

Gratefully,

Jeremy Thacker

P.S. I'm really sorry how long and rambling this was. Even then, I am certain parts of this don't make sense because I got sidetracked or left out details. Feel free to ask any questions about anything.

GPSI_00083901